## D. M. Etzler v. The State.

No. 21753. Delivered November 19, 1941.
Rehearing Denied February 11, 1942.

The opinion states the case.

*Nelson & Brown* and *Geo. W. McCleskey,* all of Lubbock, for appellant.

*Spurgeon E. Bell,* State's' Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is robbery. The punishment assessed is confinement in the State penitentiary for a term of five years.

Omitting the formal parts, it is charged in the indictment:

"That D. M. Etzler on or about the 12th day of July A. D., one thousand nine hundred and Thirty-nine and before the presentment of this indictment, in the County of Lynn and State of Texas, did then and there unlawfully in and upon G. E. Knight did make an assault; and did then and there, by the said assault, and by violence to the said G. E. Knight, and by putting the said G. E. Knight in fear of life and bodily injury fraudulently and without the consent of the said G. E. Knight, take from the person and possession of him, the said G. E. Knight, one 1937 model Chevrolet automobile, the same being the property of the said G. E. Knight, with the intent to deprive the said G. E. Knight of the same, and to appropriate the same to his, the said D. M. Etzler's own use."

Appellant first complains of the court's action in overruling his motion for an instruction to the jury to return

a verdict of not guilty. His contention is that the evidence shows that the alleged assaulted party, G. E. Knight, was not put in fear of life or bodily injury. The testimony shows that at the time of the alleged offense, G. E. Knight was employed by the Raborn Chevrolet Company of Tahoka as an automobile salesman. The company had a lot where second-hand cars were stored. Mr. Leedy, who was on the lot on the morning in question doing some painting, saw Knight across the street and called to him to come over to the lot; that he had a prospect. Knight went over there and found appellant sitting in a 1937 model Chevrolet car. He asked appellant if he desired to buy a good automobile, to which he replied, "Yes." Knight then told appellant that he could have the one he was sitting in for $525.00. Appellant remarked, "How about driving it?" Mr. Knight said, "All right, sir" and stepped into the car. He sat down beside appellant, who was then under the wheel, and they drove away on the road toward Lubbock. After they had driven seven or eight blocks, appellant stopped and told Knight to get out and get a grip which was sitting under a bush and to put it in the car. Knight saw that appellant had a pistol pointed at him; that it was loaded; and this induced him to comply with appellant's request. Knight then got back into the car, as commanded by appellant, who drove on toward Lubbock with the pistol pointed at the body of Knight. After they had passed through Lubbock and reached a point some six or seven miles beyond the town, appellant stopped and told Knight to get out, walk north and not look back until he was out of sight. During all of this time appellant had the pistol in his right hand and pointed at Knight. When he drove away, appellant told Knight that he could get his car the next morning at Big Spring. Knight further testified that he did not give appellant permission to drive the car out of Lynn County or take it from his possession; that he was not scared but thought that he was in danger with the gun pointing toward him. After letting Knight out of the car, appellant ordered him to turn over what money he had, which was approximately $14.00.

It is true that Mr. Knight testified that he was not scared but this statement is inconsistent with his conduct. If he was not afraid of being shot, why did he get out of the car, get the suitcase and then obey the command of appellant to re-enter the car? Why did he turn over to appellant the sum of $14.00 in money and let him get away with the automobile without resistance? His conduct during the "wild ride" is inconsistent with his testimony that he thought he was not in danger.

In the case of Horn v. State, 230 S. W. 693, this court, speaking through Judge Hawkins, said:

"Where the indictment alleges the robbery to have been effected by fear of life or bodily injury, the burden is of course on the state to prove it; but 'fear' in this connection does not mean a panic or fright to the extent of losing one's senses or control. The party robbed may not be 'scared' to the extent that he is hysterical. If he feels that if he complies with the request of the robber to surrender his property, there is no danger imminent to him, in a sense he might not be scared; yet, if under the circumstances and conditions surrounding the transaction he has a reasonable belief that he may suffer injury unless he does comply with the robber's request, the 'fear' required by the law is present."

Appellant took the witness-stand and admitted that Mr. Knight's testimony relative to what occurred was substantially correct with the exception as to the amount of money that he obtained from him. Appellant thought he only got five dollars.

Appellant contends that the court committed error in Paragraph 8 of his charge in submitting to the jury the issue as to whether or not G. E. Knight was placed in fear of death or serious bodily injury. He bases his contention upon the absence of sufficient evidence to raise this issue. The facts discussed immediately above dispose of this complaint adversely to appellant because they show that the evidence did raise this issue.

Appellant pleaded insanity and also filed a plea for a suspension of sentence in the event of his conviction. The proof on the issue of insanity was rather meager, and the jury found against him on that issue. We are of the opinion that the evidence is sufficient to sustain the jury's conclusion of the appellant's guilt.

Appellant contends that the evidence showed that the robbery took place in Lubbock County and not in Lynn County, as charged in the indictment, and therefore the District Court of Lynn County was without active jurisdiction to indict and try him for said offense. We are not in accord with this contention. It is true appellant started driving the car with the consent of Mr. Knight for the purpose of testing it, but after he had driven it some seven or eight blocks, he drew a pistol, pointed it at Knight, and ordered him to get a suitcase from under a

bush and place it in the car. Knight got back into the car and when he did this, appellant took control of Knight; and having control of Knight, he also had the possession and control of the car. Appellant then drove the car on beyond the town of Lubbock before he made Knight get out of the automobile. That he had conceived the idea of robbing Knight of the car when he drew the pistol and ordered him to get the suitcase and put it in the car, is a reasonable deduction from the facts. If he had only desired to satisfy himself of the operating efficiency of the car for the purpose of buying it, there was no need of having the suitcase in the car. The suitcase was but an inanimate object and it could not assist appellant in determining the efficiency of the car. Consequently, he did not need it for such purpose. His object then and there was to forcibly take the car. That he did not intend to leave behind his suitcase as it might lead to his arrest is also a reasonable inference from the facts. Moreover, his intention to take the automobile at that time is shown by the fact that he drew a pistol and commanded Knight to place the suitcase therein. He also took Knight with him to some place where he (Knight) would be delayed in getting in touch with the officers so as to give him (appellant) time to make his escape with the car. Consequently, such intention, coupled with the fact that he had a pistol pointed at Knight in driving from Tahoka, in Lynn County, thereby placing Knight and the car under his control, is sufficient to show that the robbery of the car actually took place in Lynn County and not in Lubbock County, where he released Knight from restraint. Had appellant abandoned the car before he was apprehended, then the issue of whether or not he intended to permanently appropriate it would have been raised, but he did not do so. Furthermore, instead of going to Big Spring, as he told Knight he would do, appellant went in the opposite direction. Appellant cites us to a number of cases which he contends support his contention. We have examined them and find that they are distinguishable from the instant case by the facts. We believe, by analogy, the case of Clark v. State, 220 S. W. 100, supports our conclusion here expressed.

Appellant urged a number of objections to the court's charge, none of which, in our opinion, present any error. He claims that he was entitled to an instruction to the jury relative to Article 1409, P. C., which provides as follows:

"If any person, by threatening to do some illegal act injurious to the character, person or property of another, shall

fraudulently induce the person so threatened to deliver to him any property, with intent to appropriate the same to his own use, he shall be imprisoned in the penitentiary not less than two nor more than five years."

The foregoing article of the statute has no application to the state of facts presented by this record. In the instant case, appellant did not get possession of the automobile until after he drew his pistol, pointed it at Knight and made him get the suitcase. Consequently, the prosecution was properly initiated, and pursued under Article 1408, P. C., defining robbery by assault, etc. That appellant made an unlawful assault upon Knight by the use of a pistol in a threatening manner is not controverted. See Clark v. State, supra; also Dion v. State, 126 Tex. Cr. R. 518, 72 S. W. (2d) 920; Gonzales v. State, 136 Tex. Cr. R. 469; James v. State, 53 Ala. 380.

The court fully instructed the jury relative to the law of robbery, on assault with intent to commit robbery, and aggravated assault. He also instructed them relative to the law of suspension of sentence in the event they found him guilty of an assault with intent to rob. He contends, however, that the court's instruction with reference to the law of a suspension of sentence is too restrictive in that the court limited it to the offense of an assault with intent to commit robbery, when under the law, he was entitled to have it applied to the offense of robbery. Article 776, C. C. P., specifically excepts from the suspension of sentence such offenses as robbery, arson, etc. He contends that Art. 1257a, P. C., repealed the former statute and now makes the suspended sentence applicable to all felony convictions. We do not so construe the article last mentioned. Art. 776a, C. C. P., also expressly excepts robbery, arson, etc., from the application of the suspended sentence law. Art. 1257a, supra, deals with the crime of murder only and gives one convicted of murder the benefit of a suspended sentence if the punishment does not exceed five years. Art. 776, supra, is repealed only in so far as it conflicts with Art. 1257a, P. C., and this conflict extends only to murder. There is no repeal by implication or by express language of any other portion of Art. 776, C. C. P.

Appellant has brought forward by proper bills of exception a number of complaints relating to the argument of the District Attorney on the ground that the same were prejudicial and inflammatory. The court sustained appellant's objection thereto

and with one exception instructed the jury not to consider the same for any purpose. The court states that he would have instructed the jury, as he did in all other instances, not to consider the same had appellant made such a request. It is quite evident to us that the argument did not have any prejudicial effect inasmuch as the jury assessed the lowest penalty in a rather aggravated case.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant renews his insistence that the evidence fails to support a finding by the jury that he entertained an intent to permanently appropriate the car at the time he took possession of it in Lynn County. The intent with which appellant acted can only be arrived at from his proven acts or words. It will be remembered that appellant took over the control of the car in Lynn County. He finally made Knight leave the car in Lubbock County, telling him he would find his car next morning in Big Spring. This, standing alone, if true, would warrant a conclusion that the car was taken only with the intent of temporary use. What does appellant himself say about it? "I told him to get out of the car and for him to start walking north. I got back on the highway and started back into Lubbock and went as far as the north underpass and then turned around and went north again on the Plainview highway." When appellant started back toward Lubbock he was going in the direction of Big Spring, but when he again turned north at the underpass he was going away from Big Spring, and continued on that course until he was overtaken in Swisher County. Again, we hear appellant's statement through his own witness, the sheriff of Lubbock County, who went to Swisher County for appellant, after he was stopped and detained by officers of the latter county. After testifying that appellant looked discouraged and downhearted, the witness gave the following evidence. "He said he was tired out and looked like he was about to the end of the row, and he said that he couldn't

walk any further, and he fell on that idea of getting him a car and trying to get on his way." The two statements of appellant, one in his confession, the other to his own witness, in connection with the other facts recited in our original opinion, seem to leave no doubt as to appellant's intention when he took possession of the car in Lynn County.

Appellant further insists that a reversal should be predicated on the complaint that the district attorney in argument expressed his opinion of appellant's guilt. There is nothing in this record which indicates that the district attorney knew anything about the facts save as reflected from the evidence heard upon the trial. In Marinkovich v. State, 96 Tex. Cr. R. 59, 255 S. W. 734, and Walker v. State, 138 Tex. Cr. 660, 137 S. W. (2d) 1033, we had occasion to quote with approval from the early case of Young v. State, 19 Tex. Cr. App. 536 what this court said upon the subject. We now refer to these cases again, and also call attention to the authorities cited in the cases mentioned.

A re-examination of the record leads us to say that it appears therefrom that appellant was denied no right to which he was entitled, but on the contrary, shows that he was awarded favors which might have been properly denied him had the representative of the State not waived the rules of evidence. Many ex parte letters written by friends of appellant and his family from his old home in Virginia to the former district attorney in his behalf were permitted to go to the jury, every one of which letters was subject to exclusion had the State urged objection to their admission.

We fail to see how a jury having any regard for their oath could have returned any other verdict than they did.

If any errors were committed upon the trial they were against the State, not against appellant.

The motion for rehearing is overruled.