TOMMIE TAYLOR ANDERSON V. STATE.

No. 24337. June 1, 1949.
Rehearing Denied June 24, 1949.

Appellant represented himself.

*Will R. Wilson, Jr.*, Criminal District Attorney, *George P. Blackburn*, First Assistant District Attorney, *Thomas C. Unis* and *Walter M. Collie, Jr.*, Assistants District Attorney, all of Dallas, and *Ernest S. Goens*, State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for robbery with a sentence of twenty years in the penitentiary.

The chief attack presented in this court is based upon the contention that the evidence was insufficient to support a verdict. The members of this court have been unable to agree fully on the effect of the language used by the prosecuting witness and, consequently, it will be necessary to quote his testimony at length. The question before us is whether or not the acts and conduct of the accused constituted an assault. We are able to agree that if the court had submitted the question to the jury based alone upon the allegation that he put his victim "in fear of life or bodily injury," and thereby secured from him the $152.00, the evidence should be held sufficient. Instead of doing that, the court required the jury to find beyond a reasonable doubt that appellant *made an assault upon Douglas and put him in fear of life or bodily injury.* By this, it is the view of the writer that a conviction cannot stand unless the evidence is sufficient to support a finding that an assault was committed and, also, that he put his victim in fear of life or bodily injury. Did the evidence sustain a finding that an assault was committed? For the purpose of discussing that question we quote the following testimony.

"When the Defendant opened the door and entered the building he leaned against the switchboard, the back of it, which brought him within 3-foot of me. I continued with the call

that I was making at that time. The Defendant waited for a few minutes and raised his finger up; I was still talking on the phone and I glanced up at him; he raised his finger to his lips, meaning silence, in this (indicating) manner. I thought nothing of it at the time.

"I completed the call on the switchboard; I started to rise and asked him what he wanted as I would any stranger that enters the door; there was no one in the office but myself; the office and the lobby are in one room together; this Defendant and I were the only people in that room.

"I did not talk to Defendant at that time; he made that motion to me first, before I had a chance to say anything. The Defendant had his hand in his inside coat pocket adjoining the switchboard and in between our counter and the switchboard is a Candy Bar; he raised his hand in his pocket over the counter there; it was the left pocket that he raised.

"The Defendant had on a Navy peajacket and he had his hand in his pocket and he raised that peajacket over the counter there. That Navy peajacket was the blue, heavy jacket worn in cold weather; it is made of heavy material and it comes down below the hips, it has sleeves and a collar that can be turned up over the back of the neck.

"I saw the motion that Defendant made there; his hand was in his pocket at that time; he raised the hand up over the Candy Bar in plain sight so I could see it and he waved me away from the switchboard, naturally, I moved away from the switchboard.

"Defendant, then, asked me where it was; those are the actual words; I was trying to stall. I have testified that Defendant's hand was in his pocket, that he laid it upon the counter and motioned to me and that he asked me where it was. I next stepped back away from the counter.

"I will describe how the outside outline of that hand in his pocket looked to me; the hand was in the pocket over the counter and leaning over on the counter at all times. Defendant next said that he wanted the money; the money was in the cash drawer under the counter, in a slotted cash drawer, directly under the marble top of the counter; that is a drawer built into the counter and it constitutes a cash drawer. This drawer is constructed of wood and it sits under the marble top of counter; it contains compartments for cash, currency and silver, with two or three (3) drawers sliding back and forth on top; there is a special compartment in the back used for checks and for

papers necessary in handling the cash drawer in the course of a day.

"When the Defendant asked me for the money I merely pointed to the location of the cash drawer; Defendant leaned over the counter to actually see where the cash drawer was. Defendant thrust a hand into the pocket of his peajacket and he had me in a gesture, so, I reached forward and pulled open the cash drawer. As is my habit always I kept the coin drawer forward on rollers, it slides back and forth, and I moved it forward so that there would be nothing but silver, halves, quarters, dimes, nickels and pennies and what not.

"Defendant, then, looked at it and he glanced up at me and again he made a motion with his hand in his pocket, so, I reached forward again and I did touch the currency and I moved the silver tray towards the back. The Defendant, then, reached over the counter with his free hand and picked out the currency in the cash drawer. $152.00 currency was in the cash drawer.

"Defendant next put the money in his peajacket, a pocket thereof, and he backed towards the door, the same door by which he had entered. Defendant did not say anything at that time."

Again, we quote:

"I did tell the jury that Defendant had on a peajacket, one of those medium length coats used in the Navy. I did not see a gun in his hand; in other words, Defendant had his hand in his pocket as I have described to the jury. I was really scared; I actually was scared; I wasn't taking any chance; I was excited and disturbed; I was trying to take care of the switchboard and all of that at the same time. I am sure that I was excited; I was afraid. With reference to being in fear of my life, I will say how could I tell? He might have had a gun there. To tell the truth about it I was in fear of my life; naturally, I was excited.

"I was responsible for this money there on that night; I did not give Defendant my consent to take it; I did not give it to him willingly; I gave it to him because I was afraid that he might have a gun in his pocket; I was afraid of the man, himself, that he might have a gun in his pocket and that he might use it, if I had resisted. I was afraid that I might get hurt."

As the definition of an assault is now found in our Statute, Penal Code, Article 1138, it is in the following language: "Any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it, an immediate in-

tention, coupled with an ability to commit a battery, is an assault."

The victim was put in fear of his life or bodily injury and that was the reason he handed over the money. If there was no gesture made and no words spoken to indicate an intention to force Douglas to hand over the money we could hardly find reasonable support for his conclusion that he was put in fear. In that event we would doubt that the evidence would be sufficient even if the court had submitted the case on that phase of the indictment alone. In other words, if there is any reasonable basis for finding that Douglas was put in fear of life or bodily injury, that fear must, under the peculiar facts and circumstances of this case, grow out of some act done either by threatening gesture or by words spoken.

The appellant did not say very much. He merely indicated by his gestures what he wanted Douglas to do. He succeeded, without repeated effort, in making Douglas understand what his demands were. When the money was exposed to him he took it and walked out, thus confirming the correctness of the conclusion which Douglas reached as to his purpose and intention, by the gestures described in the foregoing testimony. Look at the evidence as we may, it is inescapable that he made threatening gestures and thereby produced the fear which caused Douglas to hand over the money. These threatening gestures comply with the statute defining assault. It is immaterial what the appellant had in his hand while hiding it in his pocket. If he had nothing it would have been a foolish thing to do, unless he intended to create the impression that he had a weapon which he intended to use to force Douglas to hand over the money. It was not necessary that Douglas thought he had a pistol. He did fear he had something.

*Bryant v. State, 87 S. W. 2d 727.* Bryant was convicted for robbery. Judge Lattimore said there was but one bill of exception which complains of the refusal of the court to instruct a verdict of not guilty, because the evidence "* * * did not show the use of any assault or violence to the alleged injured party." Another question involved in the same bill was that the machine taken in the robbery was a gambling device and could not be the subject of robbery. Judge Lattimore said: "We are not in agreement with appellant upon either proposition." The facts which were held to constitute an assault were given by the proprietor who was present when two men entered his place of business and took from it a slot machine. The proprietor started toward the men to protest the taking of the machine.

One of the men said: "That is all right, you keep your mouth shut and be still." The witness then said that when he started toward appellant the other party "* * * put his hand inside his coat and told the witness that what appellant was doing was all right, and for witness to keep his mouth shut and be still." The owner of the machine then said, "I did fear for my life. * * * I felt like he would harm me if I tried to do anything about it. I felt like it wouldn't be safe to try to do anything, is why I didn't try to keep them from taking the machines." Upon this testimony this court held, without a dissenting opinion, Presiding Judge Morrow also writing on motion for rehearing, that the foregoing facts constituted an assault under the statute. This opinion has not been modified or overruled. The question under discussion has been before this court many times, under varied states of fact. We find none contrary to the foregoing opinion since the definition appeared in its present language. Many cases may be discussed that are in accord with it. Some are cited in the opinion, but we feel that it so exactly fits the question now before us that we need not discuss others.

Bill No. 1 is probably free from evidencing any error.

In Bill No. 2 it is shown that appellant was being hunted by the officers for another robbery committed some hour and a half previous to the time he was arrested; that later on he was identified by Douglas as the man who had robbed him some days before. This was objected to because at said identification appellant was under an illegal arrest, no warrant being in the possession of the officer when appellant was first arrested. It was shown in such bill that appellant was identified as the robber in the latter robbery, and officers were looking for him when the arrest was made. Again, it is also shown that Douglas testified, without objection, that he had identified appellant no less than five times as the man who robbed him. We do not think any error was shown in allowing proof of this identification in the jail.

No error being shown, the judgment of the trial court is affirmed.

HAWKINS, Presiding Judge (dissenting).

This is a conviction for robbery; the punishment, twenty years' confinement in the penitentiary.

The sufficiency of the evidence to support the conviction is challenged.

Douglas, the injured party, was night clerk in charge of a tourist court.About 10 p. m., on the night of December 10, 1947, he was seated at the switchboard, or PBX, completing a telephone call, when appellant entered. What happened is shown from Douglas' testimony which is copied at length in the opinion of affirmance to which reference is made without needless repetition.

There was no objection to the charge of the court; the complaint is that the evidence fails to support the verdict. This must be determined from the allegations in the indictment, the manner of submitting the case to the jury, and the facts.

There can be no controversy as to the facts. Appellant did not testify. No one was present but appellant and Mr. Douglas, whose evidence stands undisputed as quoted.

There are but two counts in the indictment; the first count charged that appellant made an assault upon Douglas, and by said assault, and by violence to Douglas, and by putting Douglas in fear of life and bodily injury, and by using and exhibiting a firearm, to-wit, a pistol, robbed Douglas of $152.00. This count was not submitted to the jury, and they were expressly told that the case was submitted upon the second count only. Said second count charged that the robbery was committed by *an assault and violence* upon Douglas, and by putting him in fear of life and bodily injury. In charging the jury the court told them that appellant was charged with robbing Douglas "by putting him in fear of life or bodily injury," but when he required the necessary findings of the jury, he told them they must find from the evidence beyond a reasonable doubt that appellant *made an assault upon Douglas,* and put him in fear of life and bodily injury; in other words, before a conviction could result, the court required the jury to find both that an assault was committed upon Douglas, and that he was put in fear of life or bodily injury. It is in this respect that the present case differs from Horn v. State, 89 Tex. Cr. R. 220, 230 S. W. 693. The very first paragraph in that opinion shows there were three counts in the indictment: one charging theft, another charging robbery by the use of firearms, and another charging robbery by assault, and putting in fear of life or bodily injury. We quote from that paragraph the following:

"In submitting the case to the jury the trial judge withdrew the count for theft, and robbery with firearms, *and eliminated all the elements of robbery in the first count save that charging a 'putting in fear of life or bodily injury.'*" (Italics ours.)

We are not here discussing the sufficiency of the evidence to support a conviction had the case been submitted alone upon "putting in fear of life or bodily injury."

Looking to Articles 1138 to 1141, inclusive, Vernon's Ann. Tex. P. C., 1925, and taking Mr. Douglas' own evience, we find no violence upon him which would amount to a battery, nor do we find any facts which would amount to an assault. The latter part of subdivision 3 of Article 1141, supra, reads:

"But the use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another, and under circumstances calculated to effect that object, comes within the meaning of an assault."

Reverting to the testimony of Mr. Douglas, it shows that he never claimed to have seen in appellant's pocket a "dangerous weapon or the semblance thereof." He never saw or claimed to have seen anything which looked like a weapon of any kind. It is perfectly clear that from the demonstration which appellant made, Douglas was frightened because he thought appellant "might" have a pistol in his pocket and that he (Douglas) "might" get "hurt" if he didn't let appellant take the money, and yet under the undisputed facts, appellant was not even guilty of a simple assault.

This being true, we cannot escape the conclusion that the evidence does not support the verdict and judgment, because it fails to show an assault on Douglas which was required under the charge submitted to the jury. In the opinion of my brethren the case of Bryant v. State, 129 Tex. Cr. R. 438, 87 S. W. (2) 722, is cited. We call attention to the fact that the court did not hold that the facts there present showed an "assault." After reciting the threats and conduct of accused and his companion, the court said, "We think this action of one of appellant's companions had the effect of producing upon Owens such fear of injury as to bring the violation entirely within the *statute against robbery.*" (Emphasis ours).

The judgment should be reversed and the cause remanded, and I respectfully register my dissent to its affirmance.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant files his motion herein and insists that the testimony is insufficient to show his guilt.

He also insists that he was in jail in Dallas County on December 10, 1947, the date that the state claimed he committed the herein charged offense, and that he was not released therefrom until December 14, 1947. The record is replete with evidence that he was discharged from such jail on December 4, 1947, and was at large on numerous dates prior to December 10, 1947. It is also shown by the record that appellant was ordered to be released by the sheriff on December 4, 1947; that he made bond on such date in another case, such bond being signed by two sureties on December 4, 1947, and approved by the sheriff. There was some kind of an effort made to show that the date of this release was December 14, 1947, but the proof seems conclusive that December 4th was the correct date of such release. This being true, the contention fails that appellant could not have committed this offense on December 10, 1947. We adhere to the views expressed in the majority opinion herein.

The motion for a rehearing will therefore be overruled.