265 So.2d 898

**Robert James BROWN**

v.

**STATE.**

**3 Div. 145.**

Court of Criminal Appeals of Alabama.

Aug. 15, 1972.

Jasper B. Roberts, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment in this case charges assault with intent to rob. Jury trial resulted in conviction and judgment set sentence at five years imprisonment in the penitentiary.

The evidence on behalf of the State consisted solely of the testimony of two witnesses, one Eva Campley, and one Carl Conway.

The State first introduced Eva Campley, who testified that on March 30, 1971, she was working as a cashier at Carr's Fine Foods, a grocery store in Montgomery, Alabama, and was on duty between the hours of 5:30 and 6:00 p. m. On said date appellant entered the store and shortly thereafter approached her check-out counter, apparently to pay for an item. The record shows that the following transpired:

"Q He came up to you in the check-out line?

"A  Yes, he said something and bought something from me and paid me for it, but it frightened me so I couldn't tell you what it was.

"Q  Did he have any change coming back?

"A  Yes, I gave him his change and I closed the register.  He asked me something and I didn't understand.  I said, I beg your pardon.  So he steps—my register is like this right here (indicating), and here is the check-out counter and there is nothing between this register and the walkway here at all.

"Q  All right.

"A  But if he had been mean enough he could have grabbed that money.  But he waited until I closed the register and when I closed the register he said something, and I said I beg your pardon.  I didn't understand what he said.  Then he said, and then he said—he steps right up to the rug by me.  .  .  .

"Q  Was he very close to you?

"A  Yes.  And he said, you give me that money out of the register or I will kill you.

"Q  All right.  Now, did he raise his right hand?

"A  Not as I know of, no.

"Q  Did he have anything in his hand?

"A  He had a handkerchief over his arm.

"Q  How did he hold his arm?

"A  Well, I don't know that, sir, I was too afraid.  But I do know he had a handkerchief over his right hand.

"Q  Over his right hand?

"A  Right.

"Q  What did you do when he said give me that money or I will kill you?

"A  I was just dumfounded there for a second, then I hollered for my boss.  I said, Mrs. Cusick you come here as quick as you can, and her son come running up there, Mr. Conway.

"Q  What did he say to you?

"A  That's all he said to me.

"Q  What was all he said to you?

"A  All he said to me, he said, you hand me that money out of that register or I will kill you.

"Q  All right.  And at this time he had something over his hand?

"A  He had something over his hand but I don't know what he had in his hand.  Only I do know he had a white handkerchief over his right hand."

Mrs. Campley positively identified the appellant in court as the man who attempted to rob her on the date in question.

On cross-examination Mrs. Campley testified as follows:

"Q  When this assailant, I believe you said, said let me have your money or I will kill you.  .  .  .

"A  That is right, he said you give me the money out of that register or I will kill you, that is what he said.  But he didn't put any weapon up against my body and he didn't curse me.

"Q  He just said very nonchalantly give me your money or I will kill you?

"A  That's right.

"Q  And at that point you said you hollered?

"A  I did, I hollered to Mrs. Cusick, you come up here quick.

"Q  And he walked out nonchalantly?

"A  He did.

"Q  What did Mr. Conway do at this time?

"A  He came running up to my rescue.  He didn't say nothing to the man, be-

cause he didn't know whether he had a gun on him or what.

"Q Well, how long would you say it took him to get up there?

"A Man, just as quick as he could.

"Q Well, I am just asking how long?

"A He was there in less than a minute.

"Q And would you say from your counter to the outside of the store is not more than five steps?

"A I don't know.

"Q From where the assailant was standing would you say it was more than five steps out the door?

"A Oh, it is further than that.

"Q And it hasn't been rearranged since this incident?

"A No, it hasn't been rearranged.

"Q Approximate for us if you will how long was the assailant in the store the whole time?

"A I would say from the time he came in there until he went out wasn't over five minutes."

Carl Conway, who was the owner of the grocery store, testified for the State that when Mrs. Campley screamed for Mrs. Cusick, his mother, in a frightened voice, he ran up to the front of the store in time to see the appellant cross in front of him. He testified that the appellant did not seem to be in any hurry and that he was able to see the front of the man's face as the appellant was walking out the door. Conway stated that he did not see appellant's right hand.

Both witnesses testified that they had seen the appellant in the store on prior occasions. Conway also positively identified appellant as the man who attempted the robbery.

Conway testified that subsequent to the robbery attempt he saw the appellant at City Court in Montgomery and immediately summoned a detective, who in turn notified the prosecutor who was then prosecuting a case in City Court at that very time, that the appellant was in the courtroom. Mrs. Campley was then notified to come down to the City Court, and she, together with Conway, identified the appellant as being the man who attempted the robbery. Appellant was arrested at that time.

Appellant made a timely motion for a new trial, challenging the sufficiency of the State's evidence, and, after argument, it was denied by the trial court.

I

The indictment charges that appellant "assaulted Eva Campley with the felonious intent, by violence to her person, or by putting her in fear of some serious and immediate injury to her person, to rob her, against the peace and dignity of the State of Alabama."

The only question to be determined is whether the evidence is sufficient to sustain the verdict and judgment. The statutory offense of which appellant was convicted is defined in Title 14, Section 38, Code of Alabama 1940 (Recompiled 1958) as follows:

*"What amounts to assaults or attempted felonies.*—Any person who commits an assault on another, with intent to murder, maim, rob, ravish, or commit the crime against nature, or who attempts to poison any human being, or to commit murder by any means not amounting to an assault, shall, on conviction, be punished by imprisonment in the penitentiary for not less than two nor more than twenty years."

It follows from a reading of that statute that in order to justify appellant's conviction of assault with intent to rob, the State must prove an assault as well as an intent to commit robbery. If the evidence introduced at trial is insufficient to prove either element, the conviction cannot stand as tested by motion for new trial.

An "assault" has been defined by our Supreme Court in Johnson v. State, 35 Ala. 363, as follows:

"An assault is an attempt, or offer, to do another person violence, without actually accomplishing it. A menace is not an assault; neither is a conditional offer of violence. There must be a present intention to strike. On the question, how far the intention must be carried into actual execution, before the assault becomes complete in law, the authorities do not agree. Holding a gun in a threatening position, without any attempt to use it, or intention to do so, unless first assaulted by adversary, is not an assault.— Blackwell's case, [State v. Blackwell] 9 Ala. 79. Drawing a pistol, without presenting or cocking it, is not an assault, as was decided in Lawson v. The State, 30 Ala. 14. The subject is considered in the following adjudged cases: The State v. Davis, 23 N.C. 125 [35 Am. Dec. 735]; Morton v. Shopper, 3 Car. & Payne, 373; Stephens v. Myers, 4 Car. & Payne 349; 1 Bish.Cr.Law, § 409, 2 Bish.Crim.Law, § 36."

In Flournoy v. State, 40 Ala.App. 629, 120 So.2d 121, the Court, per Price, P. J., defined assault in this manner:

" 'An "assault" is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness; with such circumstances as denote, at any time, an intention to do it, coupled with a present ability to carry such intention into effect.' Taylor v. State, 27 Ala.App. 538, 175 So. 698, 699; Tarver v. State, 43 Ala. 354; Burton v. State, 8 Ala.App. 295, 62 So. 394; Yates v. State, 22 Ala.App. 105, 113 So. 87."

■ We concede the issue here, namely, the sufficiency of the evidence to constitute an assault, to be a close question. As shown above, a mere menace, standing alone, is not a sufficient basis for the finding of an assault. Johnson v. State, supra.

■ However, where, as here, there is movement of the person of the would be assailant toward the victim, a twice repeated "Give me your money or I will kill you" threat, a hand extended, but covered with a handkerchief, such gestures and threats combined constitute a legal "assault" sufficient to sustain a conviction for assault with intent to rob. Porter v. State, 30 Ala.App. 46, 1 So.2d 309; Anderson v. State, 153 Tex.Cr.R. 501, 221 S.W.2d 268.

As was shown in Etzler v. State, 143 Tex.Cr.R. 327, 158 S.W.2d 495, the requisite, " . . . '[F]ear' in this connection does not mean a panic of fright to the extent of losing one's senses or control. The party robbed may not be 'scared' to the extent that he is hysterical. . . ." Further, as was shown in Lyles v. State, 10 Md.App. 265, 269 A.2d 178, at 179:

" . . . We said in Williams v. State, 4 Md.App. 643, 647, 244 A.2d 619, that any attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention. It is not necessary that there should be a specific purpose to do a particular injury; general malevolence or recklessness is sufficient. . . ."

Similarly, in construing the Kentucky statute, the Court of Appeals of Kentucky, in Adams v. Commonwealth, Ky., 264 S.W. 2d 283, at 285, stated:

" . . . [T]hat the statute described only one offense, namely, assault with intent to rob, which could be committed in two different ways: (a) by the use of an offensive weapon or instrument, and (b) by threatening the victim in a forcible and violent manner, regardless of whether a weapon is used. This construction of the statute has been reaf-

firmed in subsequent cases. Little v. Commonwealth, 246 Ky. 805, 56 S.W.2d 526; Terrill v. Commonwealth, 248 Ky. 613, 59 S.W.2d 564; Lanter v. Commonwealth, 268 Ky. 53, 103 S.W.2d 693."

Applying the above standards to the evidence in this case, we are clear to the conclusion that there was sufficient evidence to allow the matter to be presented to the trial jury. Root v. State, 247 Ala. 514, 25 So.2d 182, and cases cited therein.

Therefore, the trial court correctly denied the appellant's motion to exclude the State's evidence and his motion for a new trial challenging the sufficiency of the evidence.

We have carefully reviewed the entire record in this cause, as we are required to do by Title 15, Section 389, Code of Alabama 1940 (Recompiled 1958), and find same to be free from error. The judgment of the trial court is due to be and the same is hereby

Affirmed.

CATES, P. J., and ALMON and HARRIS, JJ., concur.