TYSON, Judge.
Ricky Ray Merchant was charged with the robbery of Anna Jo Jenkins by taking some $1234.00 from her person and against her will by putting her in fear, etc. The jury found the appellant “guilty of robbery” as charged in the indictment and fixed punishment at ten years imprisonment. The trial judge set sentence in accordance with this verdict.
From the overruling of the appellant’s pretrial motion to suppress, the State’s identification testimony, and the overruling of the appellant’s motion to exclude the State’s evidence, the appellant prosecutes this appeal.
Anna Jo Jenkins testified she was a cashier at the Winn-Dixie store located at 2415 Avenue E, Ensley, Alabama, on Sunday, March 6, 1977. Ms. Jenkins indicated that she was working at the cash register nearest the office toward the front of the store and had noticed the appellant come in with another black male and walk around in the produce department. She stated that he was wearing a red toboggan cap and a short black coat. She noticed him picking up produce and watched him closely. She said she later saw him leaving the store with his companion without purchasing anything. Ms. Jenkins stated she commented to Mr. Pruitt, the store’s manager, about the two boys, and he mentioned that he also had noticed them. Ms. Jenkins indicated that, later that afternoon, the appellant returned to the store and came to her check-out counter where the following occurred (R. pp. 68-69):
“Q. Tell the ladies and gentlemen of the jury about what time this was.
“A. It was between four and four thirty that afternoon.
“Q. O.K. Where did you see him?
“A. He came up to the side of the register in between the registers, hit me on the leg and said, ‘Don’t move.’- I had checked a customer out and the drawer was still open, and he said, ‘Don’t move.’ Well, I didn’t and I was real close to him and I kept looking at him.
“Q. All right. How close was he to you?
“A. I would say as close as this lady here.
“Q. Mrs. White, the court reporter?
“A. Yes, sir.
“Q. Were you face to face?
“A. He had his side view to me.
“Q. Did you ever get a chance to look him straight in the face?
“A. Straight in the face, yes, sir, because when he hit me I turned and looked at him.
“Q. Explain to the jury where his hands were when he hit you.
“A. It was in his pocket, coat pocket.
“Q. All right. Was the coat kind of like this?
“A. A little longer.
“Q. Do you know which hand he had in his pocket?
“A. He would have his left hand.
“Q. In his pocket?
“A. Yes, sir.
*629 “Q. Now how did he hit you?
“A. He hit me on the side.
“Q. Like this?
“A. Yes, sir. Said, ‘Don’t move.’
“Q. When he hit you did you feel anything hit your leg?
“A. Yes, I did — it hurt.
“Q. What did it feel like to you?
“A. Well, like something hard in his pocket.
“Q. Did you have any bruises or anything to your leg?
“A. I had a blue mark on my leg.
“Q. Cash register drawer was open?
“A. Yes, sir.
“Q. Did he have anything in his hands after he hit you, did he take anything?
“A. He had a sack in his hand after he hit me, he had a sack in one hand and then he pulled his hand out of his pocket and started taking the money out of the drawer.
“Q. Did he ever touch anything in the drawer or anything in the cash register with his hands?
“A. No sir, I’m positive he did not.
“Q. Now how much in your judgment, approximately, how much money did he take?
“A. It was around twelve hundred dollars, a little over.”
Ms. Jenkins indicated that, as she stood there, she called in a low voice for Eddie Herrtin, the grocery sack boy, who was standing nearby. She stated that the appellant, Merchant, after grabbing the money from the cash register, placed it in a paper bag, then dropped it, and had to scoop the money from the floor before running from the store. Ms. Jenkins indicated that the appellant was wearing a red toboggan cap, black pants and coat, was about six feet tall and weighed between 160 and 170 pounds. She stated that he was growing a mustache, and that she gave this description to the police officers, who were telephoned shortly after the appellant ran from the store.
Ms. Jenkins indicated that, some three or four days following the robbery in question, the appellant returned to the store with three companions. She stated that on this occasion she went to another cash register and attempted to sack up some groceries for another cashier so that she could get a good look at the appellant. She stated that in about five minutes the appellant and his companions returned to the front of the store and came to her cash register. She stated that she got a good look at them, and they were giggling and laughing, and they had picked up some candy. She stated that on this occasion the appellant bought some shrimp, paid for it and left with his companions. Ms. Jenkins reported this second visit of the appellant to Mr. Pruitt, the store manager, and also to Police Detective Sergeant Felts, who investigated the robbery.
On cross-examination, Ms. Jenkins stated that the cashier, whom she assisted on the occasion of the appellant’s coming back to the store with three companions, was Mrs. Kathleen Thompson, and that she asked Mrs. Thompson to watch her counter while she followed the boys to the frozen food department where they picked up the frozen shrimp. She said she wanted to be positive that this was the same boy who had robbed her three or four days earlier. She stated that on this occasion the appellant and his companions were in the store from five to ten minutes.
Ms. Jenkins indicated that Sergeant Felts showed her two different groups of black and white photographs of black males of similar size, and the photographs were of similar detail and clarity. She stated that no suggestion was made to her on either occasion when she examined the photographs. She stated that she could not pick out anyone on the first occasion, which was about one week after the robbery, but on the second occasion when the photographs were shown to her she picked out the photograph of the appellant without hesitation. No police lineup was involved in this case.
Ms. Jenkins made a positive in-court identification of the appellant as the person who had robbed her on Sunday afternoon, March 6, 1977, at the Winn-Dixie store.
*630 Edward Patrick Herrtin stated he was employed as a grocery “stock and sack man” at the Winn-Dixie store located at 2415 Avenue E, Ensley, Alabama, on March 6,1977. He stated that he remembered the appellant coming into the store on this date, and that he was sacking groceries in the line next to the cash register where Ms. Jenkins was working on Sunday afternoon between 4:30 and 5:00. He stated that he was only two or three feet from the appellant and noticed him wearing a red toboggan cap and a black coat. He heard Ms. Jenkins call his name. He looked up and observed Merchant, the appellant, taking money from the cash register. He stated that he saw Merchant drop the bag of money as he started out of the store, that Merchant picked up the money and the bag hurriedly, then ran from the store.
Mr. Herrtin made a positive in-court identification of the appellant.
On cross-examination, Herrtin indicated that he did not see a weapon as the appellant was taking the money from the cash register, nor did he see Merchant strike Ms. Jenkins on the leg. He stated that the appellant was bent over somewhat, reaching for the money, when he heard Ms. Jenkins call his name, and that he viewed him for about thirty seconds on this occasion. He stated that he was not shown any photographs following the robbery, nor did he participate in a police lineup. Mr. Herrtin indicated that he told Detective Felts he could identify the robber and had given him a description of the robber, indicating that he was approximately six feet tall, weighed about 170 pounds, was wearing a red toboggan cap, a dark blue coat, blue jeans, and had a “slight mustache.”
Herrtin also indicated he had talked with the appellant’s attorney, Larry Knopf, about ten days before trial, by telephone, and told him that he wanted to be sure of the identity of the appellant, but then he was sure when he saw him in court.
A motion to exclude Herrtin’s in-court identification was overruled.
Mr. John Pruitt stated he was store manager of Winn-Dixie located at 2415 Avenue E, Ensley, on Sunday, March 6, 1977. Pruitt indicated Ms. Jenkins worked at the first cash register nearest the office, and that Eddie Herrtin was employed as a stock and grocery sacker on that date. Pruitt indicated that he examined Ms. Jenkins’s cash register immediately after she reported the robbery, which occurred between 4:30 and 5:00 p. m. He stated that he discovered $1234.00 was missing from her register. Pruitt indicated that he did not get a good look at the appellant at the time of the robbery, but judged him to be about six feet tall, weighing about 175 pounds, wearing a red toboggan cap and a dark blue coat. He stated that he had been in the back of the store momentarily when Ms. Jenkins called for him to come up front. He made an in-court identification of the appellant because he had seen him in the store earlier that same morning and remembered Ms. Jenkins talking with him concerning the behavior of the appellant. He stated that Ms. Jenkins told him the appellant was picking up merchandise and laughing and giggling.
Birmingham Detective Sergeant Howard Felts testified that he was with the robbery detail and investigated an incident which occurred March 6, 1977, at the Winn-Dixie store on Avenue E in Ensley. Felts stated that he talked with Ms. Jenkins, a cashier, and also with Edward Herrtin, a sack boy. He stated that they described the appellant as being a black male, about six feet tall, weighing between 160 and 170 pounds, who was between nineteen and twenty-two years of age, with a thin mustache. Each stated that the appellant wore a red toboggan cap with a dark blue or black cloth coat and blue jeans. Each stated to him they were able to identify the appellant at a later date.
Felts indicated that on March 11,1977, he showed Ms. Jenkins a group of black and white photographs of different black males who were of similar size, and that the photographs were of similar detail and clarity. Felts stated he made no effort to outline any individual to Ms. Jenkins, but just simply requested that she look at the photo *631 graphs. A short time later, she returned these to him and indicated that the appellant was not in this group. Felts indicated that on the second occasion, March 13,1977, he showed a second group of photographs to Ms. Jenkins, and in just a few minutes she selected. the photograph of the appellant. Felts indicated that Ms. Jenkins did so without any suggestion whatever on his part, and that the second group of photographs were also of black males of similar size, that they were also black and white and of similar detail and clarity. Both groups of photographs were admitted into evidence. Felts indicated that Ms. Jenkins subsequently signed a warrant, but that no police lineup was conducted.
Felts stated that he requested the evidence technician to make fingerprint lifts, but that he was unsuccessful.
At the close of the State’s evidence, the appellant made a motion to exclude the State’s evidence, which was overruled.
The appellant recalled Mr. Pruitt, the store manager, for further examination, but did not take the stand himself and testify at trial, nor offer any other evidence.
I
The appellant contends that the victim’s in-court identification was tainted by an impermissibly suggestive photographic array, and that his motion to suppress or exclude should have been granted. The appellant cites us to Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
We have carefully considered the appellant’s argument, but we note that Ms. Jenkins, Mr. Herrtin, and Mr. Pruitt all based their in-court identification upon the fact that they had observed the appellant in the Winn-Dixie store on the date of the robbery in question, March 6, 1977. Further, both Ms. Jenkins and Mr. Herrtin had given a description of the appellant to Sergeant Felts and told him that they could make a subsequent identification. Neither Mr. Herrtin nor Mr. Pruitt were shown photographs, and Ms. Jenkins pointed out to Sergeant Felts that she did not observe anyone in the first group of photographs brought to her by him that resembled the appellant. She also testified that she observed the appellant in the store three or four days later with three companions, and that she reported this to Mr. Pruitt, the manager, and also to Sergeant Felts. She stated that she positioned herself in the store in such a manner as to observe the appellant on this occasion for about five minutes, and that he came back to her cash register where he paid for some frozen shrimp, then left the store. Ms. Jenkins’ testimony concerning the appellant’s actions at the time of the robbery and his statements to her was proper for the jury’s consideration. Brown v. State, 48 Ala.App. 456, 265 So.2d 898 (1972); Little v. State, Ala.Cr.App., 357 So.2d 379 (1978).
We do not believe that the in-court identification of the appellant by any of the witnesses in question was unduly suggestive, and, therefore, the trial court properly overruled the appellant’s motion to suppress and motion to exclude the State’s evidence at trial. Childers v. State, Ala.Cr.App., 339 So.2d 597, cert. denied, Ala., 339 So.2d 601 (1976); Dixon v. State, Ala.Cr.App., 357 So.2d 690 (1978); Lomax v. State, Ala.Cr.App., 359 So.2d 832, cert. denied, Ala., 359 So.2d 836 (1978), cert. denied, 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428.
II
Appellant asserts that reversible error occurred during the closing argument and cites us to the following colloquy (R. pp. 142-143):
“(Thereupon, Mr. Gomany addressed the jury in opening argument, on behalf of the State of Alabama, during which the following occurred:)
“MR. GOMANY: You can draw inference about a weapon—
“MR. SEABOURNE: Judge, there has been no reference to any object that has been brought out in this trial. Mr. Goma-ny knows that.
*632 “THE COURT: Ladies and gentlemen, I will caution you that statements of any one of the three lawyers is not evidence. The only evidence you are to consider in this case came from the witness stand and no other source. I will leave it up to your individual recollection as to what the evidence was.
“MR. GOMANY: How many times has Church’s Chicken been robbed by the same person?
“MR. SEYBOURNE: Ask for a mistrial. Ask Mr. Gomany to refrain from doing that.
“THE COURT: Sustain the objection. Overrule the motion for a mistrial. Exclude that last statement of the district attorney, ladies and gentlemen.
“MR. GOMANY: He wants a mistrial because he is scared.
“MR. SEYBOURNE: Judge—
“THE COURT: I don’t want to caution you again, Mr. Gomany. Sustain the objection. Sit down, Mr. Seabourne.”
As may be seen in examining the foregoing colloquy, the trial court promptly sustained the appellant’s objection indicating to the jury that lawyers’ statements were not evidence and should not be considered as such, excluded the remarks of the district attorney from the jury, and sustained the appellant’s objection.
We believe that this prompt action by the trial judge removed from the jury’s deliberation any prejudicial effect that such comment may have had. The trial judge’s emphatic action was the proper basis for his overruling the appellant’s motion for a mistrial. Woods v. State, Ala.Cr.App., 344 So.2d 1225 (1976), cert. quashed, Ala., 344 So.2d 1230 (1977); Gavin v. State, 52 Ala.App. 469, 294 So.2d 169, cert. denied, 292 Ala. 722, 294 So.2d 170 (1974); Retowsky v. State, Ala.Cr.App., 333 So.2d 193 (1976); Ellenburg v. State, Ala.Cr.App., 353 So.2d 810 (1977); Earley v. State, Ala.Cr.App., 358 So.2d 494, cert. denied, Ala., 358 So.2d 501 (1978); Bailey v. State, Ala.Cr.App., 375 So.2d 1278, cert. denied, Ala., 375 So.2d 1284 (1979); and Kuczenska v. State, Ala.Cr. App., 378 So.2d 1182 (1979), cert. denied, Ala., 378 So.2d 1186 (1980).
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.