404 So.2d 100 (1980)
Sam Dawson BAKER, Jr., alias
v.
STATE.
5 Div. 504.
Court of Criminal Appeals of Alabama.
October 7, 1980.
Rehearing Denied October 28, 1980.
Michael Sundock, Opelika, for appellant.
Charles A. Graddick, Atty. Gen., and J. Anthony McLain and James F. Hampton, Sp. Asst. Attys. Gen., for appellee.
TYSON, Judge.
Sam Dawson Baker, Jr., was charged by indictment with the offense of assault with *101 intent to ravish. A timely motion for treatment as a youthful offender was overruled, and at trial Baker was found guilty as charged, and sentenced to serve fifteen years in the state penitentiary. Baker brings this appeal in forma pauperis.
The State's first witness was the victim, Shirley Ann Waters, a Jacksonville, Florida, native who was attending Auburn University. She testified that, on the evening of November 11, 1979, she drove to the A & P supermarket, located in Auburn, arriving there at a few minutes before 7:00 o'clock. Miss Waters stated that, after parking her car in the store parking lot, she proceeded to the front of the store; she remembered that there were people inside the store and in the parking lot, and that a single black male was standing near the front door. Upon reaching the front door, she discovered that it was locked, so she began to return to her car in the parking lot. At this point, she stated, the black male, who had been by the front door, began walking "across the front of the A & P, slowly" (R. 17), and then traced Miss Waters' path back to her car, following her all the time.
Miss Waters then stated that, when she reached her car and was in the process of unlocking it, she turned and saw the black male "approaching me"; the man then pulled a knife with a blade length of "six inches" (R. 18). She testified that the man did not pull the knife until he was "a couple of feet away from me" (R. 18). She testified that the male was holding the knife with both hands, the blade being pointed upward. At this point, Miss Waters stated, she backed to her car, and the man followed, but got no closer to her than he had been initially. She then ran around the side of her car, and as the man continued his approach, she began screaming, at which point the man broke and ran. Miss Waters stated that she ran back to the grocery store, still screaming. The witness identified appellant as the black male she had seen that night.
When she returned to the front of the store, two employees of the A & P, identified as Keith Holloway and Robert Saxby, came out and chased the man. Miss Waters stated that she reported the incident to the police and later examined some photographs at police headquarters. On cross-examination, the following testimony was had:
"Q. Okay. When you walked by him to try the door and then turned back toward the parking lot, were any words exchanged at all?
"A. No, sir.
"Q. He didn't say anything to you and youdidn't say anything to him, you just turned and headed back towards your car when you found that the door was locked? As you headed back towards your car, were any words spoken?
"A. No, sir.
"Q. When you got to the vehicle itself, did anybody say anything, other than the fact that you screamed, and you were placed in fear, were any words spoken?
"A. At my car?
"Q. Yes, ma'am.
"A. No, sir."
(R. 25)
Miss Waters further stated that she had been very nervous during the incident, and that on the night of the incident, she had picked out a photograph of appellant from a group of pictures at police headquarters. She further stated that "I thought he wanted my purse" (R. 28). Finally the following testimony was elicited from Miss Waters:
"Q. Was the knife ever pointed at you?
"A. It was presented at me.
"Q. It was held up in front of him?
"A. Yes.
"Q. But it was never advanced at you?
"A. No, sir.
"Q. Did anyone, other than the young men that came out of the store, touch you at all; did this man touch you at all?
"A. No, sir.
"Q. What was the closest that he came to you?
"A. Approximately two feet.
"Q. And he never said anything to you that you recall?
"A. No, sir."
*102 (R. 28)
Keith Holloway, a high school student in Auburn and a part-time employee of the A & P supermarket, testified that, on the night of November 11, 1979, he had been working at the A & P, preparing for the store's 7:00 o'clock closing time. He stated that he heard a scream and followed Robert Saxby out of the store, where they discovered Shirley Ann Waters crying. He further testified that he and Saxby gave chase to an individual fleeing the scene, and, though the witness could not identify the individual, he did state that the person was wearing a light tan "cloth windbreaker type" jacket and dark pants, and had a "combed down" hair style. Later on the same night, the witness testified, he was in a Zippy Mart convenience store a few miles from the A & P store when he saw an individual he identified as appellant. He stated that the individual was dressed identically to the individual he had chased from the A & P parking lot earlier in the evening. Mr. Holloway stated that he walked around appellant to assure himself and noted the number on the license plate of the car as appellant left the store. This information was conveyed to the police.
Robert Saxby, an Auburn University student and also a part-time employee of the A & P, testified that, on the night of November 11, 1979, he had also heard the screams and had investigated with Keith Holloway. He stated that Shirley Ann Waters indicated the direction in which the individual had run and that he and Holloway gave chase. The witness stated that he did not see the individual again.
The final state witness was Lieutenant Edwin Downing, a member of the Auburn Police Department, who had been in the detective division of that department at the time of the events in question. The officer testified that he had not been one of the officers who had arrested appellant, but that he interviewed appellant at Police Headquarters two days later. He stated that he had read appellant his Miranda rights from a standard form, and that he further read the standard waiver form to appellant as appellant could not read or write. Lieutenant Downing stated that appellant said he understood his rights, and agreed to waive them, and that appellant signed his name to the waiver form (apparently this was the extent of appellant's ability to write).
The witness testified that he then proceeded to interview appellant, though he could not tell if appellant understood his questions. Lieutenant Downing further stated that the statement of appellant, the result of questions propounded by Downing, was not recorded or transcribed, but that he (Downing) made notes as the interview progressed. The witness stated that, when asked, "Did he want to have sex with the girl," appellant answered, "That's all, I didn't rape her" (R. 76). Further, appellant purportedly admitted having had a knife with a three inch blade, which he had discarded. Lieutenant Downing also testified that appellant said that "he told her to get into the car or he would cut her" (R. 76). The witness further testified that appellant had had on a light green jacket at the time of his arrest, which jacket had been retained by the Auburn police as evidence. He stated that he interviewed Miss Waters and that she stated to him that appellant had said nothing to her; on the basis of this interview, the witness stated, he made the decision to charge appellant with assault with intent to ravish. At this point the State rested, and appellant's motion for a directed verdict was overruled.
Appellant's case was one of alibi. Appellant first took the stand in his own behalf and stated that he could neither read nor write. He denied having been at the A & P on the day in question, stating instead that he had been at his aunt's house watching television. He further testified that, as it was his responsibility to pick up his mother from her place of work at 7:00 o'clock, he had left his aunt's before 7:00. After picking his mother up, he stated, he accompanied her to a Zippy Mart to buy some cigarettes. He testified that he was later picked up by the police and taken to the police station, but was not told why. Although *103 he identified his signature on the police "waiver of rights form," he stated that he could not understand the remainder of the writing, did not remember having it read to him, and did not understand anything that might have been read to him by Lieutenant Downing. He denied attacking Miss Waters or any girl, or having a knife in his possession. While he stated that he may have told Lieutenant Downing certain things, he denied stating that he told the girl to get into the automobile.
Margaret Richardson, appellant's aunt, testified that the appellant generally stayed over at her house on Sundays, and that he had been present on Sunday, November 11, 1979. She stated that she told appellant to leave to pick up his mother around 7:00 o'clock that evening, and that he left wearing a green windbreaker and blue jeans. She found out about appellant's arrest later, but failed to inform anyone of her story.
The final defense witness, Jossie Mae Tolbert, mother of appellant, testified that appellant had picked her up from her place of employment on November 11, 1979. She stated that appellant arrived at 7:05 p. m., and that they left at 7:30 p. m. They later drove to a Zippy Mart and were stopped by the police during the return trip. She stated that appellant had been dressed in a green windbreaker on the night in question. The defense rested, and Shirley Ann Waters was called in rebuttal by the State. She again positively identified appellant as the man in the A & P parking lot, but positively stated that appellant did not threaten her, or in fact speak to her on the night of the incident in question.
We find that the dispositive issue on this appeal is whether the State proved a prima facie case of assault with intent to ravish or rape against appellant on the evidence as set forth above. As we note from the record that appellant moved for a directed verdict at the close of the State's evidence, averring that the State had not proved the charge against appellant, the issue of sufficiency of the evidence is properly before this Court. Kontos v. State, Ala.Cr.App., 363 So.2d 1025 (1978).

I
The indictment returned against appellant charges that he "did assault Shirley Ann Waters, a woman, with the intent forcibly to ravish her, against the peace and dignity of the State of Alabama" (R. 145). The statutory basis for the offense stated in this indictment is found in § 13-1-46, Code of Alabama 1975, which states:
"Any person who commits an assault on another with intent to murder, maim, rob, ravish or commit the crime against nature, or who attempts to poison any human being, or to commit murder by any means not amounting to an assault, shall, on conviction, be punished by imprisonment in the penitentiary for not less than two nor more than 20 years."
From the language of this statute, it is obvious that the State in the instant case must have proved an assault and the requisite intent to ravish or rape. The failure of proof as to either element necessitates a reversal of conviction. Cf. Brown v. State, 48 Ala.App. 456, 265 So.2d 898 (1972). In Brown, involving a conviction under this statute for assault with intent to rob, this Court had occasion to examine a number of authorities relating to the concept of assault and what is sufficient to show an assault. We noted the decision of our Supreme Court in Johnson v. State, 35 Ala. 363 (1860), wherein it is stated:
"An assault is an attempt, or offer, to do another person violence, without actually accomplishing it. A menace is not an assault; neither is a conditional offer of violence. There must be a present intention to strike. On the question, how far the intention must be carried into actual execution, before the assault becomes complete in law, the authorities do not agree. Holding a gun in a threatening position without an attempt to use it, or intention to do so, unless first assaulted by an adversary, is not an assault ... Drawing a pistol, without presenting or cocking it, is not an assault...."
Conceding on the facts of the instant case that appellant did present a *104 deadly weapon, i. e., the knife, and was in a position to use it, Stoutmire v. State, Ala. Cr.App., 358 So.2d 508 (1978), we still find it to be a "close question" as to whether the State proved an assault by appellant. The victim testified that appellant held the knife pointed upwards, said nothing to her, did not touch her, and did not get closer than two feet away. He neither lunged at her nor harmed her in any manner. Our inclination is, based upon these facts, that appellant did not have the requisite intention to effect an assault.
However, assuming arguendo, the presence of an assault (which, as noted above, we are not constrained to do), we feel that, under these facts, the State has wholly failed to carry its burden in showing an intent to ravish, or rape on the part of appellant. It has been often stated by this Court that the elements of assault with intent to rape or ravish include all of the elements of the offense of rape, including the intent to have sexual intercourse with a woman by force or fear, against her consent, but without consummation of the sexual act. Hogue v. State, 54 Ala.App. 682, 312 So.2d 86 (1975), and cases therein cited; Kelsoe v. State, 50 Ala.App. 378, 279 So.2d 549, cert. denied, 291 Ala. 786, 279 So.2d 552 (1973). In Hogue v. State, supra, it is stated:
"The intent to rape has also been described as a condition of mind coupled with an effort of force to carry out the desire over the physical resistance of the victim. The evidence must be sufficient to show that such acts of the defendant were of the nature that there will be no reasonable doubt of his intentions to gratify his lustful desires against the consent of the female and that the act would have been carried out but for the resistance of the female or some outside force which caused him to desist. Curry v. State, 23 Ala.App. 140, 122 So. 303; and Lewis v. State, 35 Ala. 380. To justify a conviction of assault, with the intent to ravish, the evidence must show that the acts and conduct of the defendant leave no reasonable doubt of his intention to gratify his lustful desires against the consent of the female not withstanding resistance on her part. Gilbert v. State, 28 Ala.App. 206, 180 So. 306; and Wilson v. State, 22 Ala.App. 554, 117 So. 615."
We have carefully reviewed the evidence as contained in this trial record, and conclude through application of the above stated principles that the State has failed to prove beyond a reasonable doubt that appellant had any intent to ravish or rape Shirley Ann Waters. Cf. Toulee v. State, 100 Ala. 72, 14 So. 403 (1893); Taylor v. State, 20 Ala.App. 161, 101 So. 160 (1924); McCollum v. State, 34 Ala.App. 207, 38 So.2d 291 (1949). As this point is dispositive of this appeal, we express no opinion on the merits of appellant's second argument.
The judgment of conviction rendered below is reversed, and the cause remanded for a new trial.
REVERSED AND REMANDED.
DeCARLO, J., concurs.
HARRIS, P.J., concurs in result.
BOWEN, J., concurs in result and files opinion in which BOOKOUT, J., joins.
BOWEN, Judge, concurring in result only.
I can concur only in the result reached by the majority.

I
There appears to be a conflict in the law of this State as to what constitutes an assault. The principles were expressed in Stoutmire v. State, 358 So.2d 508 (Ala.Cr. App.1978) and I continue to adhere to the view I there expressed. Under such view, I find that the State's evidence, at best, shows only a conditional assault which, in this State, is no assault at all.
However, in Brown v. State, 48 Ala.App. 456, 265 So.2d 898 (1972), there was a conditional assault when a robber, armed with a handkerchief over his right hand, told his victim to give him the money or he would kill her. The court there found an assault had been committed.
*105 This conflict is recognized in R. Perkins Criminal Law (2nd ed. 1969) p. 131-32.
"A conditional offer of violence without justification or excuse is sufficient to constitute an assault. It is no answer to a charge of assault in such a case that the victim could avoid the threatened harm by complying with the unlawful command, nor that he did actually so avoid it. Thus, it is an assault to double the fist and run at another, saying, `If you say that again I will knock you down'; to draw a pistol and point it at another with the threat, `If you do not pay me my money I will have your life'; or to point a weapon in this manner and tell the other to take off his overalls and quit work or be shot.
"It should be noted that none of these three examples involves an attempt to commit a battery and hence none of them would seem sufficient to constitute an assault in a state limiting the offense to this basis alone." Citing Johnson v. State, 35 Ala. 363, 365 (1860).
The weight of authority and the modern trend does not limit assault to merely the "attempted-battery type" but includes the "intent to frighten type". This is the civil-assault situation of the intentionally-caused apprehension of injury. W. LaFave and A. Scott, Criminal Law (1972), p. 609; see also LaFave, p. 611.
Under the principles of Stoutmire, there can be no question that the defendant's actions in this case do not constitute an assault. However, some argument could be made that these same actions do constitute an assault within the broadened definition of the "intent to frighten type".

II
Apart from this issue is the question of the defendant's intent. The majority finds no evidence of any intent of any kind. I disagree.
There was some evidence that the defendant intended to "have sex" with the victim. This evidence is found in Lieutenant Downing's testimony that when he asked the defendant, "Did he want to have sex with the girl?" the defendant answered, "That's all, I didn't rape her." A logical interpretation of this question and answer is found in the brief filed by defendant's appellate counsel: "He (defendant) stated that he wanted to have sex with [the] girl but did not rape her...."
Because, in my opinion, there was no assault, as presently defined in this State, I concur in the reversal.
It must be noted that under Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), the defendant cannot be retried.