# Poe *v*. The State.

## *Murder.*

(Decided April 24, 1908.    46 South. 521.)

1. *Evidence; Confession.*—A conversation between defendant and
two persons with him just after the shooting relating to which one
of them shot first is admissible as tending to show a quasi confes-
sion.

2. *Criminal Law; Appeal; What the Record Shows.*—Where it
does not appear from the record what the purpose of the question
was or what was expected to be elicited thereby, the sustaining of
an objection to the question is not grounds for reversal.

3. *Homicide; Evidence.*—It was competent to show the effort of
defendant to buy or borrow a pistol, together with the statement
that, "I am going to get me a man," and his threats against deceased.

4. *Same; Collateral Matter.*—A difficulty between defendant and
deceased which happened four years before the killing is collateral
matter and may not be offered in evidence.

5. *Criminal Law; Appeal; What the Record Shows.*—It is not re-
versible error to sustain objection to a question as to what conversa-
tion a witness had with deceased shortly before the killing ,the rec-
ord not showing what answer was expected.

6. *Same; Harmless Error.*—Where a witness answered a question
in response to another question, and gave the testimony called for,
it was not error to sustain objection to such question.

7. *Homicide; Evidence.*—It is immaterial whether a witness had
heard of deceased making threats against defendant at the time he
had a conversation with deceased; and also why the defendant had
moved to a certain place, the latter also calling for a secret and
uncommunicated motive.

8. *Criminal Law; Evidence; Instruction.*—A charge asserting that
one setting up self defense has the burden of showing that there
was a present, impending danger, real or apparent to life or limb,
or of grievous bodily harm, from which there was no other probable
means of escape, is faulty as requiring a too high degree of proof.

9. *Same; Sufficiency of Evidence; Instruction.*—A charge assert-
ing that in order to sustain a conviction the jury is only required to
believe beyond a reasonable doubt that the shooting occurred in W.
county before the finding of the indictment, is patently bad for
omitting many elements of the offense charged.

10. *Homicide; Previously Formed Design; Instructions.*—A charge
asserting that defendant is guilty of murder if he shot and killed
deceased with a previously formed design to take life, is patently
bad, as with such design the killing may have been in self defense.

11. *Trial; Conduct of Counsel; Solicitors.*—Solicitors should not,
in the trial of criminal cases, request instructions of the court, un-
less the exigencies of the case demands.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Rad Poe was convicted of murder in the second-degree
for killing Wood Simmons, and appeals. Reversed and
remanded.

See 38 South. 1037.

The facts are sufficiently stated in the opinion of the
court. The questions asked the witness Hollinsworth,
and noted in the opinion as 4, 5, and 6, related to a con-
versation between the defendant and two gentlemen who
passed the witness a few minutes after the shooting was
heard. Question 4 is: "What did they say?" No. 5 is
the answer: "One said 'You shot first,' and one said,
'No, you shot first,' and they said, 'Drive up, boys; there
goes some one down the road to cut us off.'" No. 6 is
an answer, and is: "If there was any difference in the
report of the guns, as to which was the loudest, I could
not tell it. They were all right together."

Exception 17 is as follows: "The defendant introduc-
ed McKimbrell and asked him, 'Were you ever at Hog
Wallow Church, about two years before this killing oc-
curred, when Simmons kicked Poe?' Objection was sus-
tained to the question." 18: "Were you ever at Hog
Wallow Church, about two years before this killing,
when Simmons made an assault on Poe?" 19.: "I will
ask you if you were ever at Hog Wallow Church, about

two years before this difficulty, when Simmons tried to draw a pistol on defendant Poe?"

Rich Wilcutt was introduced as a witness by defendant, and after testifying to a part of the conversation had with Simmons, deceased, a month or two before the killing, in which Simmons had said that he did not like Poe, and that he had slapped him once at the church, and that if he ever got into another racket with him he wouldn't slap his face and kick him, but he would kill him, was asked this question: "What else did Simmons say about having kicked Poe?" Objection was sustained to this last question.

While examining Chris Frost, the defendant asked him the following questions: "Had you heard · of threats against Poe, the defendant, when you talked to Simmons—threats that had been made since Rad's return from Jefferson county?" Objection was sustained to this question, and is the basis of exception 25. 26: "I will ask the witness that if at the time he talked with defendant he had heard of threats Simmons had made since Rad's return to the effect that he would kill Rad?" Objection was sustained to this question.

The following charges were given at the request of the state: "( ) I charge you, gentlemen of the jury, that when a person sets up self-defense in justification or excuse of the killing, the burden of the proof is upon him to show to the jury by the evidence that there was a present, impending danger, real or apparent, to life or limb, or of grievous bodily harm, from which there was no other probable means of escape." Charge 8: "The court charges the jury that to prove beyond a reasonable doubt that the defendant is guilty does not mean that the state must make the proof by an eyewitness, or to a positive, absolute, mathematical certainty. This latter measure of proof is not required in any case. If from all the evi-

3 C

dence the jury believe that it is possible, or that it may be, or perhaps, the defendant is not guilty, this degree of uncertainty does not amount to a reasonable doubt, and does not entitle defendant to an acquittal. All that is required is that defendant is guilty, and if you so believe beyond all reasonable doubt from the evidence that the shooting occurred in this county before the finding of this indictment you must find the defendant guilty, although you may also believe from the evidence that it may be he is not guilty, or that it is possible he is not guilty." Charge 11: "I charge you, gentlemen of the jury, that if the deceased died from the effect of the wound inflicted by a pistol in the hands of the defendant, and such wound was intentionally inflicted in pursuance of a previously formed design to take life, he will be guilty of murder."

J. D. Acuff, for appellant. The court erred in giving charge 11 for the state.—*Burton v. The State*, 107 Ala. 108; *Martin v. The State*, 119 Ala. 1; *Hornsby v. The State*, 94 Ala. 55; *Domingus v. The State*, 94 Ala. 9; *Miller v. The State*, 107 Ala. 40; *Carr v. The State*, 106 Ala. 1. Charge 8 was also error.

Alexander M. Garber, Attorney-General, for the State. Threats made by the defendant were admissible. —*Myers v. The State*, 62 Ala. 599. The details of the former difficulty were not admissible.—*Gorden v. The State*, 140 Ala. 29. Charge 11 given for the state was correct.—*Lang v. The State*, 84 Ala. 1. Charge 10 was properly given.—*Talbot v. The State*, 121 Ala. 33. On the authority of *Jackson v. The State*, charges 3, 4, 5, 8 and 9 were properly given at the request of the state. Counsel discuss charges refused to the defendant but without citation of authority.

[Poe v. The State.]

HARALSON, J.—Indictment was found against defendant, for the murder of Wood Simmons, in the circuit court of Walker county, at its spring term, 1905; and at the request of defendant in open court, on the 15th of September, 1906, the case was transferred to the Walker county law and equity court, in accordance with the act of December 5, 1900 (Acts 1900-01, p. 112).

The defendant moved to quash the venire, but the record is silent as to any action of the court on the motion. There is, therefore, no question as to a ruling on that motion for review.

The evidence for the state tended to show, that deceased and his young son were in a two-horse wagon, driving along a road from Corona, going home, and defendant and two companions came up, riding rapidly by, and caused deceased's mules to become frightened, but deceased drove on behind them, and when they had gone some distance beyond a bridge in the road, they got off their horses, deceased being 15 or 20 steps behind them; that defendant with an oath said to Simmons, "What are you trying to run over us for?" and he replied, that he was not trying to run over them, when defendant replied, he was a liar, and that he was trying to do so; that deceased then started on, and defendant began shooting at him, while he was seated in the wagon, and struck him three times, from the effect of which wounds he died in about five minutes.

The evidence for defendant tended to show, that defendant and his companions alighted from their horses, to adjust a stirrup strap of one of them that had been broken; that deceased got out from his wagon which had stopped, picked up a stick and commenced at once firing at defendant with a pistol he had taken from his inside breast pocket, and the shooting between him and defendant began after that; that after deceased was shot, he got in his wagon, and was not killed in it.

The questions asked the witness Hollinsworth, numbered on the margin as 4, 5, and 6, calling for the conversation between the defendant and the two men with him, after the shooting, were admissible, if answered, as tending to show a quasi confession on the part of the defendant and the other parties.

Ben Wilcutt, for the state, testifying to the shooting, stated that he heard the shots; that the first two or three were from large guns. He was asked by the solicitor if he could tell which way the shot that entered deceased breast ranged, and he answered that it went tolerably straight in, and then stated, that it went a very little quartering with the way the others went; that it went nearly straight, but not in the same direction. The defendant, on the cross, asked him, "What made you change awhile ago, and say it went quartering, after saying it went straight in?" An objection by the solicitor to the question was sustained. The purpose of the question does not appear, and as far as the record shows, the objection was not improperly sustained.

. The effort of the defendant to buy or borrow Moore's pistol, and what he said—"I am going to get me a man" —and the treats he made against deceased, were admissible.—*Myers v. State,* 62 Ala. 599.

The defendant asked the witness, "If he did not state, about four years ago before the killing, that he heard Rad Poe (the defendant) say, that he would kill Simmons, if he ever ran on him again, and this was after he had kicked Rad Poe around the church?" and he answered, "Yes, sir." The state moved to exclude the part of the answer, as to kicking Rad Poe around the church, because it was going into a former difficulty, which objection was properly sustained.—*Gordon v. State,* 140 Ala. 30, 36 South. 1009. This applies as well to excep-

[Poe v. The State.]

tions 17, 18, 19 and 20, in reference to the same matter.

The witness was asked by the defendant, "If since this occurred, you have received a letter from Frank Pickett offering to hire you to testify?" The question was indefinite; but, if it was to call out evidence about deceased's kicking defendant around the church, four years before the killing, it was in reference to a collateral matter having no connection with this case, the details of which could not, as we have said, be gone into. Pickett, it seems, was aiding the solicitor, but not as an attorney, in the trial of the case.

George Poe, witness for defendant, stated that he had a conversation with deceased a short time before he was killed and was then asked "Tell the jury what it was, how he came to hear it, and all about it?" The state objected to the details, and the court sustained the objection. The record does not show what answer was expected, nor what conversation was referred to.—*Rowland v. State,* 140 Ala. 144, 37 South. 245.

The defendant's counsel stated to the court, that he desired to ask the witness, if just before the killing, he did not go to deceased in Corona, and try to bring about a reconciliation between him and Poe, and if his answer was not a threat to kill Poe. He was allowed to answer, that about two weeks before the killing, deceased, in the conversation referred to, said he would kill the damned rascal, and turned off, and he informed defendant of the treat. So, it appears the defendant got the benefit of the proof of the conversation first inquired about and disallowed, and if there was error in the first ruling, the admission of the evidence later, of this conversation, cured it, and the error, if any, was without injury.

Objections the basis of exceptions 25 and 26 were properly sustained. Whether the witness had heard of threats against the defendant at the time suggested, was

immaterial in this case. The witness was not on trial.

The defendant, being examined in his own behalf, was asked, "Why did you move to Wylam?" an objection to which question was properly sustained. Why he removed was immaterial, and besides, the question called for secret and uncommunicated motive.

The case is heavily, unnecessarily, and distressingly, burdened with charges—for what good purpose it is difficult to comprehend. There were 11 asked by the solicitor and given; 45 were given for defendant, and 40 asked by him were refused, making 96 in all.

Charge 1 should not have been given as it required of defendant too high a degree of proof.

Charge 8, as it appears in the record, is ,in substance that, in order to sustain a conviction, the jury is only required to believe beyond a reasonable doubt that the shooting occurred in Walker county before the finding of the indictment. This is patently a bad charge—the giving of which constitutes reversible error.

Charge 11 is bad and should not have been given. The hypothesis of the charge is, that the defendant is guilty of murder if he shot and killed the deceased with a previously formed design to take life. This design he may have had, and yet, he may have killed the deceased in self-defense.—*Domingus v. State,* 94 Ala. 9, 11 South. 190; *Karr v. State,* 106 Ala. 1, 11, 17 South. 328; *Harbour v. State,* 140 Ala. 103, 37 South. 330.

We suggest that, in the trial of criminal causes, the better practice is, that solicitors refrain from asking written charges unless the exigencies of the case absolutely require it.

For the errors in giving the first, eighth and eleventh charges requested by the state, the judgment is reversed and the cause remanded.

Reversed and remanded.

Tyson, C. J., and Simpson and Denson, JJ., concur.