# Allsup v. The State.

## Murder.

(Decided August 1, 1916. 72 South. 599.)

1. **Evidence; Res Gestae.**—Where defendant mortally wounded another at the same time and in the same difficulty in which deceased was shot, and within five minutes after the shooting came to the state's witness, who had seen the latter difficulty, and who was standing within thirty yards of the place, and in answer to a statement by the witness that defendant had killed both of them, defendant said "I do not give a damn, let them die," such answer was not admissible as part of the res gestae.

[Allsup v. The State.]

2. **Same; Declaration Against Interest.**—A statement by a defendant shown to be prima facie voluntary, and to have been made when defendant was not under restraint, or in the presence of any person in authority, "I do not give a damn, let them die," tended to illustrate and give color to defendant's conduct, and was admissible as a quasi confession or as a declaration against interest.

3. **Same.**—Under such circumstances the burden is upon the state to show that such declaration was voluntary and admissible.

4. **Appeal and Error; Showing Error; Burden.**—Where an appeal is taken from a conviction in a criminal case the burden is upon the defendant to show affirmatively that his quasi confession or declaration was received in evidence without proof that it was voluntary.

5. **Homicide; Evidence.**—It is not admissible to show the particulars of a difficulty between defendant and deceased some hours before the fatal encounter.

6. **Same.**—The fact that the state's witnesses and some of their friends were drinking during the morning before the difficulty over at the home of one of defendant's witnesses, was immaterial and inadmissible.

7. **Same.**—Evidence as to the location of the body of deceased when certain parties reached the place of the killing, and that these parties assisted in moving the body, and its condition at the time was relevant in connection with their testimony as to the map of the grounds where the killing occurred, since it tended to show their knowledge as to the situation of the deceased when he was shot.

8. **Witnesses; Examination; Refreshing Recollection.**—Where, on the Sunday next after the killing, a witness took a written statement under oath from another witness with reference to the homicide, which statement was written out as such other witness recited the facts, and was read to him after it was completed, and was signed by him, the statement was within the rule authorizing a witness to refer to a memorandum or writing to refresh his recollection.

9. **Appeal and Error; Harmless Error; Evidence.**—Where the statement was offered by defendant and admitted in evidence of what such other witness had stated, any injury arising from the refusal to a witness of a right to refer to the written statement of such other witness to refresh his recollection, was rendered harmless.

10. **Same.**—Where a written statement of a witness's testimony was allowed in evidence, the denial of questions as to the custody of the statement after it was made, and previous to the trial, was not injurious, since the only purpose of such question was to lay a predicate for its admission.

11. **Homicide; Evidence; Dying Declaration.**—While a defendant may offer a dying declaration as exculpatory evidence where the death of the declarant is the subject of the charge, the dying declarations of another are not admissible, although such other was killed by defendant in the same difficulty.

12. **Witnesses; Examination; Bias.**—It was proper to permit the State on cross examination of the witnesses to show that such witness and deceased had had a quarrel or a difficulty on the day that deceased was killed, as tending to show bias in the witness.

[Allsup v. The State.]   ·

13. **Homicide; Evidence.**—The fact that deceased stayed at the house of a witness on the night before the killing and that he left that house about 12 o'clock, and was then drinking, and that the other party killed by defendant at the same time was also drinking, was immaterial.

14. **Appeal and Error; Harmless Error; Evidence.**—Any error in the exclusion of evidence of a witness for defendant that witness and deceased heard some shooting after leaving a station, and that deceased said it was defendant, and then shot twice, was cured by a subsequent admission.

15. **Witnesses; Credibility; Moral Turpitude.**—As going to his credibility, it was permissible to show, on cross examination of a witness, that a witness for defendant had been convicted of grand larceny (§§ 4008-9, Code 1907).

16. **Same; Cross Examination; Scope.**—The scope of the cross examination of a witness as to irrelevant matters for the purpose of testing the accuracy of his evidence, or to show bias, is a matter resting largely within the enlightened discretion of the trial court, and will not be reviewed unless abuse is shown.

17. **Homicide; Self Defense; Assuming Facts.**—An instruction assuming that the evidence showed without dispute that a defendant was in imminent peril of his life, or of serious bodily harm when he fired the fatal shot, was properly refused under the evidence in this case.

·   APPEAL from Marion Circuit Court.

Heard before Hon. C. P. ALMON.

Frank Allsup, alias, was convicted of murder in the second degree, and he appeals.   Affirmed.

No counsel marked for appellant.   W. L. MARTIN, Attorney General, and P. W. TURNER, Assistant Attorney General, for the State.

BROWN, J.— (1-4)  The defendant was indicted for killing Less Rape, the indictment charging murder in the first degree, and was convicted of murder in the second degree and sentenced for a term of ten years.   The evidence shows that, at the same time and in the same difficulty that Rape was shot and killed, the defendant also shot and mortally wounded one Clay, who died from the wounds inflicted upon him the following day.   The state's evidence shows that at the time of the shooting the state's witness John Davis was present and witnessed the difficulty between defendant Allsup and Clay, and that within five minutes after the shooting the defendant came up to where the witness was standing, which was within 30 yards of the place of the difficulty, and witness said:   "Frank, you have played h——l. You have killed both of those boys"—and defendant said:   "I do not give a d——n.  Let them die."   While the defendant's de-

claration was not a part of the res gestæ, it was admissible as a quasi confession or declaration against interest, and was shown to have been prima facie voluntary. The defendant at the time was under no sort of constraint, and was not in the presence of a person in authority; and his statement tended to illustrate and give color to his conduct.—*Stone v. State,* 105 Ala. 60, 17 South. 114; *Poe v. State,* 155 Ala. 31, 46 South. 521. The rule now is: "While, to authorize this kind of declarations as evidence against a party in a criminal prosecution, it is the duty of the trial court to ascertain that they were freely and voluntarily made, still, on appeal, it will be presumed that the trial court properly performed this duty before they were admitted in evidence, unless the record affirmatively shows that the court did not do so."— *Whatley v. State,* 144 Ala. 68, 39 South. 1014.

Otherwise stated, the burden is on the state, when offering the evidence in the trial court, to show that the confession is voluntary and admissible; and on appeal the burden is on the defendant to affirmatively show that the confession was received in evidence without showing that it was voluntary.

(5) Evidence as to the particulars of the difficulty between the defendant and deceased at Bass' house some hours before the difficulty was not admissible, and all such testimony was properly rejected on the objection of the solicitor.—*Ella Smith v. State,* 197 Ala. 193, 72 South. 316; *Jackson v. State,* 177 Ala. 15, 59 South. 171; *Bluett v. State,* 151 Ala. 41, 44 South. 84; *Robinson v. State,* 155 Ala. 67, 45 South. 916.

(6) The fact that the witness Davis and some of his friends were drinking during the morning before the difficulty over at the house of Bass was not material to the case on trial, and the court properly sustained the solicitor's objections to such questions.

(7) The evidence as to the location of the body of Rape when Vickery and the others reached the scene of the killing, and that Vickery and Edmonds assisted in moving it, and its condition at that time, was relevant in connection with the testimony of Vickery and Edmonds as to the map of the grounds where the killing occurred, as it tended to show the knowledge of the witness as to the situation of the deceased at the time he was shot.

(8) The witness Gambill testified that he took a written statement under oath from the witness Davis with reference to

[Allsup v. The State.]

the killing on the next Sunday after the killing; that the statement was written as Davis recited the facts, and read to him after it was completed, and he signed it. On this showing, the paper was well within the rule authorizing the witness to refer to a memorandum or writing for the purpose of refreshing his recollection.—*Hitt Lbr. Co. v. McCormack,* 13 Ala. App. 453, 68 South. 696; *B. R. L. & P. Co. v. Seaborn,* 168 Ala. 658, 53 South. 243.

(9, 10) Yet, the paper itself was offered by the defendant and admitted in evidence as evidence of what Davis stated, and injury from the ruling of the court denying the witness the right to refer to the paper and refresh his recollection was thereby averted. The only purpose of the questions eliciting testimony as to the custody of the written statement after it was made, and previous to the trial, was to lay a predicate for the admission of the paper in evidence; and, the paper having been allowed in evidence, no injury from the ruling of the court denying such questions is shown.

(11) While the accused may offer the dying declaration as exculpatory evidence where the death of the declarant is the subject of the charge, the dying declaration of another, though killed by the accused in the same difficulty, is not admissible.— *Moore v. State,* 12 Ala. 764, 46 Am. Dec. 276; *Johnson v. State,* 47 Ala. 9; 21 Cyc. 981 [VIII, C, 8, b, (1)].

(12) The ruling of the court allowing the state on cross-examination of the witness Kennedy to show that witness and deceased on the day of the killing had quarreled or had a difficulty was free from error. This course of cross-examination was permissible as tending to show bias on the part of the witness.— *Cox v. State,* 162 Ala. 66, 50 South. 398; Underhill, Crim. Ev. § 248; *McSwean v. State,* 10 Ala. App. 163, 64 South. 543.

(13) The witness Marvin Bass, offered by the defendant, was allowed to testify that Rape stayed all night at his house the night before the killing the next day, that he left there about 12 o'clock, and was drinking at that time, and that Charley Clay was also drinking. How these parties had manifested their intoxicated condition previous to that time during the morning was not material, and the objection to the question eliciting such testimony was properly sustained.

(14) After the testimony of the witness Marvin Bass, to the effect that witness and deceased, after leaving the station heard

some shooting, and deceased said, " 'That is Frank Allsup,' and took out a gun and shot twice," was excluded on motion of the solicitor, on further examination of the witness this testimony was repeated and not excluded; and, if it was erroneously excluded in the first instance, the error was cured by the subsequent admission of the testimony.

(15) It is always permissible to show that a witness has been convicted of an offense involving moral turpitude, as affecting his credibility; and, under this rule, it was permissible for the state to show on cross-examination that the witness Bass had been convicted of grand larceny.—Code 1907, §§ 4008, 4009.

(16) The scope of the cross-examination of witnesses as to irrelevant matters to test the accuracy of their testimony or show bias is a matter largely within the enlightened discretion of the trial court, and no abuse of this discretion was shown in the cross-examination of the witness Burnett.—*Cox v. State, supra.*

We have examined the numerous rulings of the court on questions of evidence not hereinabove noticed, and find no error therein.

(17) Charge B was the affirmative charge for the defendant, and was properly refused.

Charge 6 assumes that the evidence showed without dispute that defendant was in imminent peril of his life, or of serious bodily harm, at the time he fired on the deceased, and was properly refused.

There is no error in the record, and the judgment is affirmed. Affirmed.