274 So.2d 95

**David WRIGHT**

v.

**STATE.**

**8 Div. 272.**

Court of Criminal Appeals of Alabama.

Feb. 27, 1973.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment against David Wright charged him with the felonious assault with a shotgun on James Goolesby, a deputy sheriff of Jackson County, Alabama, said deputy being in the performance of his lawful duties.[1] The Jury found the appellant guilty as charged, and judgment and sentence fixed punishment at ten years imprisonment.

Deputy Sheriff James Goolesby testified that on March 9, 1972, he was on routine patrol in the Town Creek Community in Jackson County, Alabama, at about 2:00 p. m., being in uniform, and driving a sheriff's vehicle. He stopped to examine a pasture area in which several days earlier he had found some unlawful beer and whiskey hidden. After checking the area, he started back to his car, and, from a

Thomas & Worley, Huntsville, for appellant.

1. Title 14, Section 374(20), Code of Alabama 1940, as amended in 1967.

wooded area approximately fifty to seventy-five yards away, he observed the appellant, David Wright. He heard a loud shot and immediately felt the side of his face, shoulder and arm "burning real bad." The shot came from the direction where he saw the appellant in the woods. Deputy Goolesby struggled to his car, got the radio, and called for help. He stated that a fellow deputy answered his call, and that he spent four days in the hospital being treated for the pellet wounds.

On cross-examination, the deputy was asked if he saw a shotgun, and he stated that he did not, but that he saw the appellant from the waist up, that he had seen him many times and recognized him in the woods, and that he did not have a hat on. He was further asked if he had not been out two or three days previously and picked up some two cases of beer and whiskey and a case of Vodka in this area. He replied that he had done so but that he had turned all of this in to the sheriff's office. He was also asked on cross-examination if he had not arranged for C. W. "Big Head" Johnson to shoot at him that day near the pasture, or had they not made an arrangement the previous day, and were they not splitting up the money from the sale of the beer and whiskey. To this Deputy Goolesby replied that he had turned in all beer and whiskey to the sheriff's office, and that "If I had known there was going to be any shooting I wouldn't have been up there"; that he had gone almost through the woods and was almost back to the car at the time of the shooting, and that the pellets were 7½ size shots, some twenty-seven having lodged in his head and neck, and ten or twelve in his shoulder and chest.

The State next presented the testimony of Lt. Marvin Bryant, a State investigator who made photographs of the appellant on March 11, 1972, at the Jackson County Hospital, depicting and showing Deputy Goolesby's condition. These were admitted in evidence.

The State next presented the testimony of C. W. "Big Head" Johnson, who testified that on March 9, 1972, he, along with Roy Gamble, Jimmy Middleton, and "Juanita somebody," was at the home of the appellant, David Wright, drinking beer; that all of them saw Deputy Goolesby drive by up the road in his car, and they heard David Wright say, "There is that God Damn Goolesby . . . if he doesn't stop getting my beer and whiskey I am going to have to kill him." A few minutes thereafter he saw David Wright leave the house with a shotgun, and four or five minutes later heard two shots from a thicket down in the woods. When the appellant returned to the house he handed the gun to Roy Gamble and said get rid of it. He further stated that the appellant made the comment that he had gotten rid of the shotgun hulls. On cross-examination Johnson admitted that he had previously been convicted of grand larceny, and that he and the others were drinking heavily at the time of the occurrence, but that he was not "plumb drunk." He denied calling Deputy Goolesby and telling him where the beer and whiskey had been hidden which was picked up two or three days earlier, or that there was any arrangement between himself or Goolesby, or any other law enforcement officer concerning the selling of beer and whiskey and dividing the money. He also denied that he had ever fired any weapon at Goolesby or had any such plan to shoot at Deputy Goolesby or any other deputy.

Witness Roy Gamble stated that he had been at the appellant's house on Thursday, March 9, 1972, at about 2:00 p. m., and all of them saw Deputy Goolesby drive by in his car. He stated that a few minutes thereafter, he saw the appellant go out of the house with a shotgun and return a short time later; that he handed the shotgun to him and stated for him to get rid of it and that he would let him know what to do later. He stated that he took the shotgun over to C. W. Johnson's house and hid it under it. The following day when Sher-

542

iff Collins came out to investigate, he gave the gun to the Sheriff. He stated that in addition to the appellant and himself, Jimmy Middleton, Bill Porter, and C. W. "Big Head," or Dub Johnson had been there, all drinking beer, and perhaps Juanita Harbin, or Eddie Sanders had come by for a short time.

Sheriff Collins testified that on March 10, 1972, he had gone to the house of Dub Johnson with Roy Gamble, and that a shotgun had been turned over to him by Roy Gamble at that time.

Deputy Sheriff Bobby Saint testified that on Thursday afternoon, March 9, 1972, he had assisted in the investigation of the shooting of Deputy Goolesby and found a spent shotgun shell "about 150 feet behind David Wright's house." He stated that he smelled it and noticed that it had recently been fired.

The State next called Keith Smith, who testified that he was a city policeman at Scottsboro, Alabama, and had gone with Deputy Bobby Saint to investigate the shooting of Deputy Goolesby, and that he had found a recently fired sixteen-gauge 7½ shotgun shell which he and Deputy Saint turned over to Sheriff Collins; that this was found a short distance from appellant's house, about 125 feet therefrom.

Lt. Marvin Bryant, State Investigator, was then recalled and testified that he took the two shotgun shells in question to the State Toxicology office.

The State next called Brent A. Wheeler, who testified that he was employed by the Department of Toxicology and Criminal Investigation of the State of Alabama, and that Lt. Marvin Bryant had delivered two shotgun hulls, sixteen-gauge, No. 7½, to him for investigation. He further stated that he test fired the shotgun, which Sheriff Collins turned over to him, and that the spent hulls came from the shotgun in question.

Deputy Goolesby was then recalled to the stand and testified that he was unable to drive his vehicle, and the first officer to arrive was Deputy Troy Ferguson, who took him to the hospital. On cross-examination, he was asked if he had sworn out warrants for Will Matthews, C. W. Johnson, Jimmy Middleton, Roy Gamble, or David Wright. He stated that he was in the hospital and had not sworn out warrants on any of them.

The State then called Deputy Troy Ferguson. He testified that he was the first officer to arrive at the scene on March 9, 1972, when Deputy Goolesby was shot, and that a few minutes after arrival, Sergeant Bean from Huntsville came over with some dogs; that they tracked some footprints toward the house of the appellant, David Wright. He stated that all occupants of the house were arrested that afternoon. He stated that two other officers found two spent shotgun shells in some woods under some vines where the dogs had tracked toward the appellant's house.

Sheriff Collins was then recalled to the stand, and he testified that he had talked with the appellant in his office, and after giving him a full "Miranda warning," and in the presence of Lt. Bryant and Deputy James Pell, the appellant had made an oral statement that the shotgun was his, and that he had bought it from Allie Grayson's grandson. He stated that the appellant further admitted that he had been drinking heavily that afternoon and had taken some diet pills.

Appellant presented the testimony of one Eddie Sanders, who stated that he had been in the appellant's home on March 9, 1972, shortly after 2:00 p. m., and that there were several people there drinking beer. He stated that he saw C. W. "Big Head" Johnson leave the house with a shotgun in his hand, having left the house about three to five minutes after a deputy sheriff's car had passed by, and that he heard the gun fire twice and did not see anyone come back to the house. On cross-examination, he admitted that he had been at the appellant's home several times

when the place had been raided by county officers and beer and whiskey found.

Appellant then presented the testimony of Jimmy Middleton, who testified that he had seen "Big Head" Johnson on the afternoon of March 9, 1972, and heard him state in his presence that "I shot twice." Jimmy Middleton was then asked on cross-examination about a statement given on March 9, 1972, at about 7:00 p. m. to Sheriff Collins and Deputy Barney Harding to the effect that he could do more with David Wright than anybody, and that he had "gone out to the edge of the road and yelled for him two or three times to come out," and that later David came back to the house and told him that they would never find the gun, and pointed toward C. W. "Big Head" Johnson's house. Middleton then admitted having made this statement to the officers; and that all persons there had been drinking quite a bit of beer and whiskey that afternoon.

The appellant then took the stand and testified that the persons who had testified previously were all at his home on March 9, 1972, drinking beer and whiskey at about 2:00 p. m., and that C. W. "Big Head" Johnson had come around his house every now and then, and that on that afternoon, had taken the gun and gone out and later come back and gave it to Roy Gamble, making the statement, "I shot twice." On cross-examination the appellant admitted that he was drinking beer and whiskey and had taken some diet pills, and further admitted telling the Sheriff that he had purchased the gun from Grayson's grandson.

On rebuttal, the State then called Chief of Police Barney Harding, who testified that he had been with Sheriff Collins on investigation about 7:00 p. m. on the night of March 9, 1972, and in talking with Jimmy Middleton, he had made the statement, "I saw a deputy's car go past the house, and someone made a remark about it, and David Wright said, 'I wonder if he is going to find anymore of my stuff. Me or him one has got to go.'" Then further, "I

saw David Wright with a shotgun in his hand going out the front door," and later, "David was already back to the house and told us they would never find the gun and pointed in the direction of C. W. 'Big Head' Johnson's house."

### I

■ The appellant raises four contentions. He contends that the photographs of Deputy Goolesby were inadmissible. We believe these photographs, having been properly identified and made by Lt. Bryant, were properly admissible, showing the condition of Deputy Goolesby following the assault. Smarr v. State, 260 Ala. 30, 68 So.2d 6; Pilley v. State, 247 Ala. 523, 25 So.2d 57.

### II

When Deputy Goolesby was recalled to the stand, after having been fully cross-examined following his initial testimony, the following exchange occurred:

"Q. You and C. W. Johnson were not unfriendly toward each other about dividing some beer and liquor out there?

"Mr. Black: We object to that.

"The Court: I sustain the objections to that.

"Mr. Foster: We except.

"Mr. Foster: That is all.

"Mr. Black: Come down."

■ The right of a thorough and sifting cross-examination belongs to everybody as to the witnesses called against them. Title 7, Section 443, Code of Alabama 1940. Green v. State, 258 Ala. 471, 64 So.2d 84; Sowell v. State, 30 Ala.App. 18, 199 So. 900, and cases cited therein.

■ On cross-examination Deputy Goolesby had been asked if he and C. W. "Big Head" Johnson had made all this up for him to be shot at on the date in question,

and, further, had he not met Johnson in Scottsboro and made arrangements for him to pick up beer and whiskey, and for him to sell it. Deputy Goolesby stated that he had been out there on March 7, 1972, and picked up two cases of whiskey and Vodka, and had turned all this in to the Sheriff's office. He denied that there had been any arrangement between him and Johnson and said, if there was going to be any shooting at the sheriff's car, he would not have been out there.

We are of the opinion that the exchange above shown falls within Cox v. State, 162 Ala. 66, 50 So. 398, as follows:

"A wider latitude is allowable on the cross, than upon the direct, examination of a witness. It is permissible upon a cross-examination, for the purpose of testing the memory, sincerity, etc., of the witness, to interrogate him as to matters wholly irrelevant to the issue in the case. The latitude and extent of such cross-examination, however, is a matter that must, of necessity, rest largely, if not exclusively, within the sound discretion of the trial court, and, so long as that discretion is not abused, the action of the trial court will not be revised on appeal. The refusal of the trial court to permit an extended cross-examination as to irrelevant matters, for the purpose of testing the witness along the lines suggested, cannot be said to be an abuse of discretion, nor denial of the right of a cross-examination, and hence can furnish no just ground of complaint on appeal, to a reversal of the cause. It is within the discretion of the trial court, likewise, ex mero motu, to arrest such a cross-examination whenever in its sound judgment it seems proper to do so. We fail to see that the trial court committed any error . . ." See also Allsup v. State, 15 Ala.App. 121, 72 So. 599; Pouncey v. State, 24 Ala.App. 326, 136 So. 741; Broadway v. State, 35 Ala.App. 86, 45 So.2d 480.

As stated by our former Court of Appeals through our distinguished Presiding Judge, then Cates, J., in Pinkard v. Hastings, 41 Ala.App. 677, 149 So.2d 293:

"Our statute, Code 1940, T. 7, § 443, confers the right of 'thorough and sifting' cross-examination, yet this does not mean the trial judge may not step in when the sifting is merely repetitive." See Smith v. State, 23 Ala.App. 405, 126 So. 185; Burke v. State, 44 Ala.App. 379, 209 So.2d 859.

Under the above authorities, there was no error in the ruling above quoted.

### III

The appellant filed a motion for new trial, challenging the weight and sufficency of the evidence in this cause, and had also asked for the affirmative charge at trial.

We conclude that the testimony presented in behalf of the State clearly established a legal assault sufficient to allow the question to be presented to the trial jury, and the appellant's request for the affirmative charge and motion for new trial challenging the sufficiency of the evidence were properly overruled. Brown v. State, 48 Ala.App. 456, 265 So.2d 898; and Bryant & Williams v. State, 49 Ala.App. 359, 272 So.2d 286, cert. den. 1973, 289 Ala. 740, 272 So.2d 297.

### IV

Following an extensive oral charge to which the appellant answered satisfied, a number of written requested charges were given. As to the five refused charges, we have carefully examined each and find that such were properly refused as being either affirmative in nature, argumentative under the evidence, and therefore invasive of the province of the jury, or were fully or substantially covered in the trial court's oral charge, or other given charges. Therefore, their refusals were proper. Title 7, Section 273, Code of Alabama 1940.

We have carefully reviewed this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment of the trial court is due to be and the same is hereby

Affirmed.

All the Judges concur.