TYSON, Presiding Judge.
The indictment charged the appellant, Willard L. Cary, alias, with the robbery of John Raiford Medders. The jury found the appellant “guilty as charged” and fixed punishment at twenty years imprisonment. The trial court then entered judgment which set sentence in accordance with this verdict.
Officer David Hanks of the Midfield Police Department testified that on May 15, 1976, he received a call around 10:00 p. m. to go to 1223 Twelfth Avenue, Midfield, Alabama. Upon arrival he found Mrs. J. R. Medders in the front yard, bound hand and foot, with tape on her mouth. Mr. Medders was found inside the residence beaten very badly, but still breathing. Mr. Medders subsequently died.
Mrs. Medders testified that the appellant had rented a house from her husband which was located next door. In March, 1976, the appellant and his family moved to Walker County, leaving all of his furniture and belongings. The appellant also left owing Mr. Medders some money. Mr. Medders collected “Wheat Pennies”[1] and “Barr Dollars.”[2] The appellant was aware of this and had seen them in the Medders’ home. Mrs. Medders testified that on May 15, 1976, two men over six feet tall drove up in a white van and asked Mr. Medders if they could buy some bricks. The two men then pulled guns out and said, “This is a holdup.” *617 They tied up Mrs. Medders in the bedroom, and she testified that she could hear them beating her husband in the next room. A pistol was taken by one of the men from Mrs. Medders’ poeketbook, and she was beaten with it several times. Mrs. Medders identified State’s Exhibit No. 7 as the pistol which was taken from her poeketbook.
James Welch, the appellant’s father-in-law, testified that on May 15, 1976, the appellant, his wife, two children, two men and another woman were at his home. That same day Welch left for Florida and did not return until May 16, 1976. Welch testified that they were driving a white van. At this time the appellant was making Oklahoma his home and was just visiting in Alabama.
Wanda Cassidy, the appellant’s former wife, testified that the appellant and his family lived with her for several days in Tulsa, Oklahoma. The appellant then rented a home across the street from Cassidy. Cassidy introduced the appellant to Rick and Skip Ashlock, two work-release convicts. Cassidy testified that the appellant told the Ashlock brothers that Medders would be easy to rob. Cassidy, the Ash-locks and the Cary family left for Jasper, Alabama, on May 14, 1976, in a white van. On May 14,1976, they arrived at the appellant’s father-in-law’s home. After Welch (appellant’s father-in-law) left for Florida, the Ashlock’s left in the white van and did not return until 10:30 or 11:00 p. m. that evening. The appellant, according to Cassi-dy, told her that they had gone to rob Medders. The Ashlocks, Cassidy testified, returned with blood on their clothes, carrying “Wheat Pennies,” a bunch of one dollar bills, pistols, and jewelry. Within an hour of their arrival they left for Oklahoma. The Ashlocks were dropped off in Eufala, Oklahoma, and the rest went back to Tulsa. Cassidy drove -to Eufala a couple of days later and took the Ashlocks to Houston, Texas, where they sold a pistol to one Jimmy MeLane (State’s Exhibit No. 7).
Darlene Cary, the appellant’s wife, said she did not see any blood on the Ashlocks when they returned after the alleged robbery.
The appellant denies any knowledge of the robbery.
The sole issue presented by the appellant is whether the trial court erred in refusing to allow the cross-examination of Wanda Cassidy regarding possible bias, interest, and motive in giving her testimony.
During the cross-examination of Cassidy by the appellant, the following exchange occurred (R. pp. 96-97):
“Q. No. Did you call your lawyer?
“A. Yes, sir.
“Q. Okay. And he told you, did he not, that if you would come to Alabama to testify that you wouldn’t be prosecuted. Isn’t that correct?
“MR. REYNOLDS: We object.
“THE COURT: Sustained.
“A. My lawyer—
“Q. (By Mr. Waites) Well, you understand that you are not going to be prosecuted, don’t you?
“A. Yes, sir.
“Q. And you understand that you are not going to be prosecuted because you are testifying; isn’t that correct?
“MR. REYNOLDS: Judge, I object to that.
“THE COURT: Sustained.
“MR. WAITES: We except, if it please the Court, I think it goes to bias.
“THE COURT: Sustain objection.
“MR. WAITES: We except.
“Q. (By Mr. Waites) But you have been told that you were not going to be prosecuted?
“A. Let me say this. When I first—
“MR. REYNOLDS: Judge, I object. Just answer the question.
“THE COURT: Just answer the question.
“THE WITNESS: Repeat the question, please.
“Q. (By Mr. Waites) You have been told you were not going to be prosecuted. Is that correct?
“A. Yes.” [Emphasis added]
The possibility of bias or interest on the part of this witness was squarely before the jury for their consideration. Allen v. State, 55 Ala.App. 549, 317 So.2d 517. As may be seen, Cassidy testified on two occasions during cross-examination that she understood she would not be prosecuted. *618 Therefore, when a witness admits her bias or interest, no purpose is served by further cross-examination. Nations v. Harris, 214 Ala. 339, 108 So. 29; Smith v. State, 41 Ala.App. 528, 138 So.2d 474.
The balance of this questioning being largely repetitious, no error is shown. Wright v. State, 49 Ala.App. 539, 274 So.2d 95; Browder v. State, 54 Ala.App. 369, 308 So.2d 729, cert. denied 293 Ala. 746, 308 So.2d 735; Washington v. State, 57 Ala. App. 465, 329 So.2d 155; Colston v. State, 57 Ala.App. 4, 325 So.2d 520.
The record being free from error, the judgment is
AFFIRMED.
All the Judges concur.

. Wheat pennies are the pennies produced during and prior to 1958 which featured a wheat design on the back.

. Barr Dollars are treasury notes issued in 1963 during the month that Joseph Barr was Secretary of the Treasury.