Arthur Kendricks was indicted by the grand jury for assaulting a law enforcement officer with a deadly instrument while he was engaged in the active discharge of his lawful duties. Trial was had on a plea of not guilty. The jury returned a verdict of "guilty as charged in the indictment" and the trial court set sentence at five years imprisonment in the penitentiary.
Officer Ross J. Spurlock of the Birmingham Police Department testified that, on December 31, 1978, he and his partner, Michelle Frawley, were working the 3:00 to 11:00 p.m. shift in a marked patrol car. Both officers were in uniform at the time. They received several calls to go to the general area of the tenth block of Center Place, Southwest. On the first call the officers had a conversation with a Mrs. Mary Jelk, who informed them that her son was Arthur Kendricks.
At approximately 9:30 that evening the officers received a call to return to Center Place, Southwest. Officer Spurlock stated that when they arrived in the area they observed a person walking toward them down the middle of the street. Officer Spurlock drove the patrol car beside the person (whom he positively identified in court as being the appellant) and asked him to identify himself. Not understanding the mumbled reply, Officer Spurlock asked the person to step away from the patrol car so that he (Spurlock) could get out of the car.
When Officer Spurlock attempted to open the door of the patrol car, the appellant reached behind him, produced a pistol, pointed it at Officer Spurlock, and pulled the trigger. Officer Spurlock stated that appellant's pistol clicked and that he immediately pulled his own pistol and fired four times at appellant. He recalled that he heard two more clicks. Officer Frawley jumped out of the patrol car and also fired *Page 1205 
at appellant. Her testimony at trial corroborated that of Officer Spurlock.
Appellant was wounded by the gunfire and fell to the ground still grasping the pistol. The officers disarmed the appellant and called for paramedics and an evidence technician.
Officer Gayle Yester, an evidence technician for the Birmingham Police Department, testified that when she arrived at Center Place, Southwest, on the night in question Officer Spurlock handed her a .38 caliber Rossi revolver. Upon opening the cylinder of the weapon, Officer Yester found one unfiredbullet in the first chamber on the counterclockwise side of the hammer. She stated that she determined that the cylinder on the Rossi revolver rotated in a counterclockwise direction when fired.
The revolver and the bullet, State's Exhibits B and C, respectively, were received into evidence.
Lawrence Whittaker testified for the defense that, on December 31, 1978, he observed appellant drink two half-pints of gin during the course of the evening. He stated that appellant was walking to get more to drink when the police drove up. Whittaker heard the police tell the appellant to place his hands on the car and then the shooting started. He said he did not see a weapon in appellant's hand at this time.
On cross-examination the witness admitted that the appellant had the revolver (State's Exhibit B) in his back pocket that night and that he had fired it a number of times that evening "just starting the New Year's off" (R. p. 108).
Appellant testified in his own defense that when the police officer asked him to place his hands on the patrol car, "I spun around so fast, you know, he shot me through fear" (R. p. 138). He admitted having the pistol on his person but denied ever pointing it at the officers. He claimed that after he was shot Officer Spurlock took the gun out of appellant's pocket.
On cross-examination, appellant recalled that on the day in question he had drunk a pint and a half of vodka and gin, half a fifth of wine, and three beers, but he claimed he was not intoxicated at all.
 I
The first issue on this appeal is whether the prosecutor's questioning of Lawrence Whittaker and appellant in the following exchanges so prejudiced appellant as to require reversal of this cause. From the record:
"Q. I will ask you this:
 "Did you see Arthur take that pistol and put it to his brother's head and start to click it?
"MR. MARTIN: Objection.
"THE COURT: Wait a minute. I sustain the objection.
"Q. Was Arthur's mother there?
"A. Yes, sir, she was there."
(R. p. 100)
. . . . .
 "Q. Did anyone in your presence call the police department out there?
"A. I guess a bunch of people called them.
"Q. Because someone was shooting, is that right?
"A. That's right.
 "Q. It was because Arthur was shooting around there, wasn't it?
"A. Yes, sir, he shot.
"MR. MARTIN: Objection, Your Honor.
"THE COURT: It is already answered. Overrule.
(R. p. 101)
. . . . .
 "Q. He didn't — did you hear him over there celebrating New Year's anymore, shooting the gun?
"A. Maybe he shot it one, or two, more times.
 "Q. One, or two, more times there at his mama's house?
"A. That's right.
"Q. Did you go over there at all?
 "A. That is what made me walk around there from the girl's house.
 "Q. You kind of walked around there from your girl's house then? *Page 1206 
"A. Between the houses, over there.
"Q. You walked over there to where —
 "A. I walked over there and got him, and said, `Come on, man, let's go.'
 "Q. Well, at that time did he have the gun to his brother's head, and was he clicking the trigger then?
"A. He ain't clicking no trigger.
(R. p. 111)
. . . . .
 "Q. You say you were never present when Arthur Kendricks pointed the gun at his brother, is that right?
"MR. MARTIN: I object.
 "MR. HEFFLER: Objection, Your Honor. We move for a mistrial.
"THE COURT: Let me say this:
 "I am going to sustain the objection. This same general type question has been asked several times.
 "I overrule the motion for a mistrial. Let's confine this to the issues involved in the case.
"MR. COLEE: That's all.
(R. p. 124)
. . . . .
CROSS-EXAMINATION OF APPELLANT
 "Q. Lawrence's sister told you to leave, didn't she, because you were shooting the gun there?
"MR. HEFFLER: Objection, Your Honor.
"A. No, she didn't tell me to leave.
 "THE COURT: I sustain the objection. Listen, let's stay away from instances that are not a part of the res gestae of this offense.
 "We are not trying him for something that may, or not, have happened at his mother's house, or at somebody else's house.
 "So, let's stay away from that, please, sir, and I instruct the jury not to — we are trying this person for what is charged in the indictment, not for a bunch of other things that may, or may not, have happened.
 "These other things — of course, a course of action has to be in evidence for you to know what the surrounding circumstance was, but going into details, ladies and gentlemen, of some other purported act, don't regard that, because it has no bearing on the issues involved in this case. I do instruct you not to consider that.
"All right, let's proceed."
(R. pp. 155, 156)
No error is apparent in the above noted exchanges. In each instance cited by appellant his objections were either sustained (R. pp. 100, 124, 155-156), or were untimely made (R. p. 101), or no objection was interposed at all (R. p. 111).
That objections must be timely interposed and an adverse ruling had from the trial court before a legal question is preserved for appellate review is a rule of long standing in Alabama. Alabama Digest, Criminal Law, 1030 (1); Calhoun v.State, Ala.Cr.App., 343 So.2d 1 (1977).
 "As may be seen from reviewing the above cross-examination, the defense counsel did not object until after the question was answered. Clearly, his objection came too late. Barnett v. State, 52 Ala. App. 260, 291 So.2d 353, and authorities therein cited. Moreover the appellant did not moved to exclude or invoke a further ruling from the trial court, hence such answer is not properly before us for review. Veith v. State, 48 Ala. App. 688, 267 So.2d 480." Retowsky v. State, Ala.Cr.App., 333 So.2d 193, 201 (1976). See Bailey v. State, Ala.Cr.App., 375 So.2d 1278, cert. denied, Ala., 375 So.2d 1284
(1979).
The trial court was also correct in denying appellant's motion for mistrial. In Crouch v. State, 53 Ala. App. 261,299 So.2d 305, cert. denied, 292 Ala. 718, 299 So.2d 312 (1974), the appellant, accused of committing murder, objected to the prosecutor's question about appellant's involvement with marijuana and moved for a mistrial. The trial court sustained the objection and denied the motion for mistrial. In affirming the trial court's action, this court observed that "[T]he sustention of defense objection *Page 1207 
to the question about marihuana sufficed. The witness had not answered, hence only a question was in the record. Ordinarily a mistrial is too drastic a penalty in such a posture. A mistrial only springs into being upon `a manifest necessity * * * or when the ends of justice would otherwise be defeated.' Code 1940, T. 30, § 100. Thomas v. Ware, 44 Ala. App. 157,204 So.2d 501; Harnage v. State, 290 Ala. 142, 274 So.2d 352." Id. at 267, 299 So.2d at 311.
Likewise, a mistrial is "too drastic a penalty" under the facts of the present case. See also, Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967).
 II
Appellant next asserts that the State failed to present a prima facie case and, therefore, the trial court erred in overruling his motion to exclude.
The offense of assaulting a police officer with a deadly weapon, while said officer was engaged in the active discharge of his lawful duties, requires proof of (1) an assault; (2) with a deadly instrument; (3) upon an officer as defined; (4) while the officer is in the active discharge of his lawful duty. § 13-1-42, Code of Alabama, 1975; Stoutmire v. State, Ala.Cr.App., 358 So.2d 508 (1978). The appellant maintains that the State failed to prove that the pistol involved in this case is a deadly weapon.
"We are clear to the conclusion that a pistol as commonly understood is a deadly weapon and therefore within the scope of the instant statutory section." Hopkins v. State, 51 Ala. App. 510, 286 So.2d 920 (1973).
In the present case, both officers testified that appellant pulled a pistol, pointed it at Officer Spurlock, and pulled the trigger. They both heard the weapon click two or three times. The gun contained an unspent bullet in its cylinder. The possibility that the bullet may have misfired or been incapable of being fired does not relieve the gun of its deadliness. "Deadly imports that death is likely to be produced." Hopkinsv. State, supra, at 512, 286 So.2d at 921.
The trial court correctly overruled appellant's motion to exclude. Wright v. State, 49 Ala. App. 539, 274 So.2d 95 (1973);Washington v. State, 57 Ala. App. 465, 329 So.2d 155 (1976).
There being no error shown by the record, this case is due to be and is hereby
AFFIRMED.
All the Judges concur.