Columbus Lawson was indicted and convicted for the murder of Lloyd Reese. Sentence was twenty-five years' imprisonment. Five issues are raised on appeal.
 I
The trial court did not err in refusing to charge the jury on criminally negligent homicide because there was no evidence of legal negligence in the defendant's conduct.
The State's evidence revealed that the defendant, the deceased, and Terry Batton were among a number of laborers waiting for jobs at a labor union hall on the morning of May 4, 1983. According to Batton, the defendant attempted to break in line in front of him. Words passed between the two men and Batton warned the defendant *Page 118 
three times "not to go for his pocket." Someone started screaming "he's got a gun" and the defendant fired two shots at Batton and began chasing him. One of these shots struck Lloyd Reese in the back of the head and killed him.
Batton ran to his truck and displayed his own pistol. The defendant then retreated inside the union hall where he was arrested by a Birmingham police officer without incident. The defendant handed the officer his derringer and said, "I shot the wrong m___ f___." Outside the union hall, the defendant told Batton, "You was the m___ f___ I was after."
Sometime after the shooting but before the defendant retreated inside the union hall, he went to the brother of the deceased and said, "Man, I ain't meaning to kill your brother. I'm going to kill that m___ f___."
In contradiction of the State's evidence, witnesses for the defense testified that Batton had been trying to keep everyone straight in line and had had an argument with at least one other person in the line. Batton accused the defendant of getting his "spot" and drew his pistol but never fired. The defendant fired two shots.
Curtis Morrow testified that the deceased "had jumped out. I guess he had jumped out to see what was going on and got shot."
The defendant admitted firing twice after he saw Batton with a pistol in his hand "coming out of his pocket with it." The defendant testified that before he ever saw Batton point the pistol at him he drew his derringer and "never did get the hammer all the way back" before he released it and fired his first shot in Batton's "direction". He stated that Batton was "going back" when he fired and that as Batton backed away he walked after him: "Everytime I would take my gun off him he would start standing back up so I put it back on him and he'd squat down and back up some more." When asked if he ever held his derringer on Batton before he fired that first shot, the defendant testified, "I never did hold it on him `cause too many peoples kept coming across in front of people, going around behind from one guy to another."
The defendant testified that his first shot must have hit the deceased. He fired the second shot after Batton was behind his truck, but stated that he could not fire at Batton because of the truck and that he "just shot in the direction."
The defendant testified that he did not "aim" at Batton but did shoot at him "in a sense." He told the police, "I fired a couple of shots. . . . I hit the wrong guy by mistake. He run out in the way in between us."
The defendant argues that a charge on criminally negligent homicide was justified because he was partially justified in his actions because he acted in good faith but with the unreasonable belief that he was acting in self-defense and that the killing of the deceased was accidental. This defense constitutes a combination of the imperfect defense doctrine and accident.
"The `imperfect defense' doctrine which provided that a person committed the offense of criminally negligent homicide if he intentionally or recklessly caused the death of another person in the good faith but unreasonable belief that he had grounds for justification (self-defense) has been rejected by the Alabama Legislature. Comments to Alabama Code 1975, Section13A-6-4 (Amended 1979)." Gwin v. State, 425 So.2d 500, 510
(Ala.Cr.App. 1982), cert. quashed, Ex parte Gwin, 425 So.2d 510
(Ala. 1983).
Here, as in Wakefield v. State, 447 So.2d 1325 (Ala.Cr.App. 1983), there is no evidence of any negligence in the defendant's conduct. Although an accidental killing may support a conviction for negligent homicide, Ex parte Weems,463 So.2d 170 (Ala. 1984), "[a] killing is not accidental when the act causing death is done intentionally." Phelps v. State,435 So.2d 158, 165 (Ala.Cr.App. 1983). *Page 119 
In this case, criminal negligence involved the failure to perceive the substantial and unjustifiable risk that someone might be killed when the defendant fired his pistol. The defendant himself indicated that there were eighteen or nineteen people standing in line when the shooting occurred, although the State's evidence showed approximately forty-five. The defendant testified that he could not point his derringer at Batton because "too many peoples kept coming across in front of people." It is undisputed that the defendant intentionally fired his pistol either at or in the direction of another human being. His conduct excludes the possibility of negligent or inadvertent risk creation. There was simply no rational basis for a verdict of criminally negligent homicide. Raines v.State, 455 So.2d 967, 975 (Ala.Cr.App. 1984); Sparks v. State,450 So.2d 188, 191-92 (Ala.Cr.App. 1984); Quates v. State,439 So.2d 199 (Ala.Cr.App. 1983). Additionally, we note that self-defense and accident are inconsistent defenses. Wakefield, 447 So.2d at 1327.
 II
In his opening remarks, the prosecutor told the jury that the defendant "was sitting in a car with some other guys and that they were sitting over there smoking marijuana and drinking wine."
In response to the objection of defense counsel, the trial judge instructed the jury that they were "to consider as evidence in this case . . . the testimony that comes from the witness stand to my immediate left and from no other source." Defense counsel then requested a mistrial, which was denied.
"The prosecution's opening statement to the jury on what it expects to prove should be confined to statements based on facts admissible in evidence. Counsel, however, is to be allowed considerable latitude in presenting to the jury in his opening statement what he expects the evidence to show." Whitev. State, 294 Ala. 265, 270, 314 So.2d 857, cert. denied, Whitev. Alabama, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). "`Counsel must restrict his opening statement to the issues of the case, and to the theory of the case as fixed by the pleadings, and although it is ground for reversal for him to call attention to collateral matters calculated to prejudice the jury, the fact that statements proper in themselves might also produce other collateral consequences harmful to the opposite party does not, if made in good faith, make the statements improper.' * * * `Counsel, of course, may, in a reasonable way, outline what he expects to prove, unless it is manifest that such proof would be incompetent, or the offer or statement is made for the purpose of improperly influencing the jury.'" Daniels v. State, 243 Ala. 675, 679, 11 So.2d 756, cert. denied, Daniels v. Alabama, 319 U.S. 755, 63 S.Ct. 1168,87 L.Ed. 1168 (1943). "`Counsel has no right, in his opening statement, to rehearse before the jury facts which he is not in a condition to prove.'" Handley v. State, 214 Ala. 172, 174,106 So. 692 (1925). "[I]t is not contemplated that by the abuse of this privilege an attorney will inject into the proceedings immaterial and prejudicial matter." Patterson v. State,34 Ala. App. 359, 361, 39 So.2d 709 (1948).
At trial, Floyd Reese, Jr., the deceased's brother, testified, without objection, that approximately three hours before the shooting, he saw the defendant drinking wine outside the union hall in an automobile with some other men: "[W]hen they dranked that one they'd go get another one. As fast as they finished one bottle they'd go get another one." There was no other evidence that the defendant had been drinking and there was substantial evidence that he had not been drinking. There was absolutely no evidence that he had been smoking marijuana. The defendant denied either drinking or smoking.
In a homicide prosecution, evidence that the accused had been drinking shortly before the killing is admissible to show the condition of the accused at the time of the difficulty, Weemsv. State, 222 Ala. 346, 347, 132 So. 711 (1930), and to *Page 120 
negative self-defense. Hall v. State, 11 Ala. App. 95,65 So. 427 (1914).
 "If it was a fact that when the incident occurred one of the parties to it was under the excitement of strong drink, this fact was one proper to be considered by the jury in weighing the conflicting evidence as to how the difficulty started and what was done by the participants in the course of it. It is not to be doubted that evidence tending to prove that on an occasion in question one was intemperate or insulting in his expressions and hasty or violent in his conduct is strengthened by evidence tending to prove that at that time his ability to act soberly and with discretion was impaired by intoxication. The fact was a relevant one, in that it added to the probability of the defendant's conduct having been such as the evidence unfavorable to him tended to prove. It is common knowledge that one's use of intoxicants is liable to disturb his mental equilibrium, to weaken his power of self-restraint, and to induce hasty and unwarranted utterance and action without a due regard to consequences. The evidence in question, added to the probative effect of that which tended to prove that the defendant, and not his adversary, was at fault in starting the fight, and that in firing the shots he was influenced otherwise than by a purpose to defend himself from a real or reasonably apparent impending peril to life or limb." Hall, 11 Ala. App. at 98-99, 65 So. 427.
For these same reasons, evidence that the accused had been using any type of intoxicants, including drugs, shortly before the homicide is relevant and admissible. 22A C.J.S. CriminalLaw § 621 (1961).
Although there is conflicting authority that such evidence is immaterial and inadmissible, Allsup v. State, 15 Ala. App. 121,124, 72 So. 599 (1916); Cain v. State, 16 Ala. App. 303, 308,77 So. 453 (1917); Killen v. State, 16 Ala. App. 31, 75 So. 176, cert. denied, 200 Ala. 474, 76 So. 568 (1917), those cases can be distinguished upon their individual facts. See also Gregoryv. State, 140 Ala. 16, 37 So. 259, 262 (1904), for the proposition that evidence of intoxication is relevant when there is evidence of self-defense. See also Sandlin v. State,25 Ala. App. 311, 312, 146 So. 82 (1933); Duff v. State,40 Ala. App. 80, 84, 111 So.2d 621 (1958), cert. denied, 269 Ala. 696, 111 So.2d 627 (1959). "It is also the well-settled doctrine of this court, that when the act charged is one committed with a particular or specific intent, which is of the essence of the crime, drunkenness, as affecting the mental state and condition of the accused, is a proper subject for the consideration of the jury in deciding the question of intent."McLeroy v. State, 120 Ala. 274, 25 So. 247, 250 (1899).
Since evidence of the defendant's intoxication was relevant and admissible at trial, the prosecutor's remark was not inherently improper. The mention of marijuana was improper because there was never any evidence adduced at trial to support such a contention, however, there has been no allegation that the comment was made in bad faith.
This Court does not consider the comment that the defendant was smoking marijuana to have been ineradicable. The trial judge's instructions were sufficient to cure any prejudice the remark might have caused. "A motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court." Nix v. State,370 So.2d 1115, 1117 (Ala.Cr.App.), cert. denied, Ex parte Nix,370 So.2d 1119 (Ala. 1979). The defendant's request for a mistrial due to the prosecutor's comment was properly denied.
 III
The trial judge properly excluded the testimony of defense witness Ken Spencer that, immediately after the shots were fired he heard a bystander say "I thought Terry [Batton] was going to shoot." "A spontaneous exclamation in the form of an opinion, which the declarant would not be permitted to express were he testifying in court as a witness, is inadmissible." *Page 121 
C. Gamble, McElroy's Alabama Evidence § 265.01 (9) (3d ed. 1977).
 IV
After the jury had been deliberating, they requested to be recharged on the offenses of murder and manslaughter. In complying with that request, the trial judge charged:
 "Now, manslaughter is what is known as a lesser included offense. By lesser included offense, that means that in this circumstance the lesser included offense is not as serious offense as far as terms of punishment as murder."
This is a correct statement of the law. Although the responsibility for sentencing is exclusively with the trial judge, Alabama Code 1975, § 13A-5-1 (a), and punishment is not for the jury's consideration, the jury was never charged on the range of sentences involved for each offense. We find that the language of the above charge is not objectionable and the error, if any, was harmless. Brazell v. State, 423 So.2d 323,325 (Ala.Cr.App. 1982). The judge merely stated the obvious. It is a matter of common knowledge that the more "serious" the offense, the greater the punishment, and that murder is a more "serious" offense than manslaughter.
 V
Count one of the indictment charged intentional murder. Count two charged non-capital felony-murder and charged, in pertinent part, that the defendant "while in the commission of another felony or attempted felony, to-wit: attempted murder or attempted assault first degree, and in the cause of and in furtherance of said crime that the said COLUMBUS LAWSON was committing or attempting to commit, or was in immediate flight from COLUMBUS LAWSON, did cause the death of Lloyd Reese, by shooting him with a pistol." Count two followed the pattern indictment form prescribed by State of Alabama Criminal CodeIndictment And Warrant Manual, p. 6-1 (A.L.I. 1979).
The defendant contends that count two of the indictment should have been struck for its failure to allege the identity of the victim of the attempted assault or intended murder.
The motion to strike was properly denied. "In general, although there is authority to the contrary, an ordinary charge for murder without averment of the connected felony is sufficient to charge a homicide committed in the perpetration of a felony." 40 C.J.S. Homicide § 148 (1944). See also Harveyv. State, 341 So.2d 187, 188 (Ala.Cr.App. 1977).
 "However, an indictment or information may count specifically on the connected felony as supplying the necessary elements to render the homicide murder; and where it does it should set forth the felony and charge the killing by accused while engaged in the commission thereof. In such case, although there is some authority to the effect that the constituent felony must be averred with the same formality which would be requisite were it the sole basis of a count in an indictment, as a general rule it is sufficient to allege that the killing was committed in the perpetration of or attempt to perpetrate a designated felony or felonies, or in the escape or withdrawal therefrom, without setting out in detail the facts constituting the alleged felony or felonies." 40 C.J.S. Homicide § 148.
See also 40 Am.Jur.2d Homicide § 218 (1968).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 122